Commonwealth *v.* Beam, Appellant.

Argued September 18, 1973.   Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

Before REED, JR., J.

*Carmen P. Belefonte,* with him *Garland D. Cherry,* and *Kassab, Cherry and Archbold,* for appellant.

*Philip J. O'Malley,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., April 3, 1974:

This is an appeal from judgments of sentence for resisting arrest and assault and battery.

The facts of the instant case are not in dispute. On February 23, 1972, Patrolman Joseph Ianni of the Chester Police Department ticketed two Chester Cab Company taxis for parking violations. The company is owned by appellant. On the following day, appellant approached Ianni and asked whether he had ticketed the two cabs. When Ianni answered affirmatively, appellant began shouting and threatening the officer with bodily harm. After a crowd gathered, Ianni told appellant to calm down or he would be arrested. Appellant continued his verbal abuse of the officer and was finally advised that he was under arrest for disorderly conduct. Ianni then directed appellant to a nearby police car. Appellant continued to shout and turned suddenly and punched Ianni in the face. He was restrained by the police and taken into custody.

Appellant was charged with disorderly conduct, a violation of a city ordinance. At a summary proceeding, appellant entered a plea of guilty to the charge and was fined. He did not appeal that conviction. Appellant was also indicted on charges of resisting arrest and assault and battery. A jury returned guilty verdicts on both counts.

Although appellant raises a number of contentions, only two merit consideration. Appellant first argues that the disorderly conduct statute under which he was arrested is unconstitutionally vague; that an arrest for a violation thereof is thus unlawful; and, consequently, that his conviction for resisting arrest and assault and

battery must be vacated. Appellant's second contention is that his trial for resisting arrest and assault and battery placed him twice in jeopardy, and was in violation of the rule announced by the Supreme Court in *Commonwealth v. Campana*, 452 Pa. 233, 304 A. 2d 432 (1973).

# I

Appellant cites numerous Supreme Court decisions[1] which have declared various ordinances violative of the due process clause because of their breadth and vagueness. These cases, however, involve the reversal of convictions for violations of such ordinances. They do not support appellant's contention that the vagueness of the ordinance gives rise to a right to violently resist an arrest for conduct which an officer observes and reasonably believes to be in violation of a law which the officer is bound to enforce.

The issue at appellant's trial did not involve the constitutionality of the ordinance. The only issue was whether the officer had observed conduct which gave rise to a reasonable belief that appellant was engaging in conduct which fell within the prohibition of the ordinance. *Commonwealth v. Garrick*, 210 Pa. Superior Ct. 124, 232 A. 2d 8 (1967). If so, the arrest was legal, and appellant's resistance thereto was in violation of the statute.[2] Since legislative enactments are presumed valid until declared otherwise, *Lutz v. Ar-*

---

[1] *Bachellar v. Maryland*, 397 U.S. 564, 90 S. Ct. 1312 (1970); *Gooding v. Wilson*, 405 U.S. 518, 92 S. Ct. 1103 (1972); *Ashton v. Kentucky*, 384 U.S. 195, 86 S. Ct. 1407 (1966).

[2] "Whoever knowingly, wilfully and forcibly obstructs, resists or opposes any officer . . . in making a lawful arrest without warrant, or assaults or beats any officer . . . in making a lawful arrest without warrant . . . is guilty of a misdemeanor . . ." Act of 1963, July 11, P. L. 234, §1 (18 P.S. §4314).

*mour*, 395 Pa. 576, 151 A. 2d 108 (1959), the officer had every right to act in performance of his law enforcement duties under the ordinance without being subject to an arrestee's physical resistance thereto. To allow the scene of an arrest to be converted into a forum for challenging the validity of criminal statutes by resistance to an arrest thereunder would only serve to promote violent street confrontations.[3] *United States v. Ferrone*, 438 F. 2d 381 (3d Cir. 1971) ; *United States v. Martinez*, 465 F. 2d 79 (2d Cir. 1972) ; *United States v. Beyer*, 426 F. 2d 773 (2d Cir. 1970).

The jury was properly instructed on the issue of whether appellant's actions gave rise to a reasonable belief that he was violating the ordinance, and determined that appellant was lawfully placed under arrest.

---

[3] There has been considerable erosion of the concept first announced in *John Bad Elk v. United States*, 177 U.S. 529, 20 S. Ct. 729, 44 L. Ed. 874 (1900) that there exists a right to forcibly resist an unlawful arrest. The development of orderly and effective procedures for the vindication and prospective protection of constitutional rights provides peaceful alternatives to forcible resistance to arrest subsequently determined to be unlawful. Section 5 of the Uniform Arrest Act and Section 304(2)(a)(i) of the Model Penal Code abrogate the right to *forcibly* resist an arrest *made by a police officer*, whether there is a legal basis for the arrest or not. The legislatures of Rhode Island, Delaware, New Hampshire, and California have abolished the right to resist an illegal arrest, thereby removing the legality of the arrest as a defense to forcible resistance offenses. R.I. Gen. Laws Ann. §12-7-10 ; Del. Code Ann. Titl. 11 §1905 (1953) ; N.H. Rev. Stat. Ann. 594.5 ; Cal Penal Code §834(a) (Supp. 1966). The New Jersey Superior Court has prospectively eliminated the right. *State v. Koonce*, 89 N.J. Superior Ct. 169, 214 A. 2d 428 (1965). Judge Learned HAND stated that the right is "not a blow for liberty, but, on the contrary, a blow for attempted anarchy." 1958 Proceedings, American Law Institute, p. 254. Compare Warner, The Uniform Arrest Act, 28 Va. L. Rev. 315 (1942), with Chevigny, the Right to Resist an Unlawful Arrest, 78 Yale L. Journ. 1128 (1969). See *Wainright v. City of New Orleans*, 392 U.S. 598, 88 S. Ct. 2243 (1967).

The court properly refused to regard the constitutionality of the ordinance as an issue at the trial for assault and battery and resisting arrest.

## II

Appellant's seecond contention is that the prosecutions for resisting arrest and assault and battery were barred by the previous adjudication of the disorderly conduct charges. Since the former charges arose from the same "episode", "incident" or "transaction", appellant argues that the Commonwealth was required to bring all charges in one proceeding, and that the failure to do so requires a dismissal of the charges under *Commonwealth v. Campana*, 452 Pa. 233, 304 A. 2d 432 (1973).

It is clear that the charges in the instant case arose from the same incident or transaction as the disorderly conduct charges, so as to come within the rule of *Campana*. We do not believe, however, that the decision should be applied to cases in which the first criminal charge has been prosecuted before the date of the *Campana* decision.

"[T]he retroactivity or non-retroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact upon the administration of criminal justice, and the way in which these factors combine must inevitably vary with the dictate involved." *Johnson v. New Jersey*, 384 U.S. 719, 728, 86 S. Ct. 1772, 1778 (1966). In determining whether a newly adopted rule should be applied retroactively, the criteria to be employed are: "(a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards and (c) the effect

on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno,* 388 U.S. 293, 297, 87 S. Ct. 1967, 1970 (1967).

Generally, where the purpose of a new constitutional doctrine is to cure a defect in the criminal procedure which impairs the truth finding function, and thus raises doubt as to the validity of the guilty verdicts, the rule will be given full retroactive effect. See, e.g., *Arsenault v. Massachusetts,* 393 U.S. 5 (1968); *McConnell v. Rhay,* 393 U.S. 2 (1968); *Berger v. California,* 393 U.S. 314 (1969); *Roberts v. Russell,* 392 U.S. 293 (1968). In the context of the application of double jeopardy principles, however, the reliability of the truth determining process is not in issue. *Mulreed v. Kropp,* 425 F. 2d 1095, 1099 (6th Cir. 1970). Thus, an analysis of the purposes to be served by the double jeopardy rule involved in the instant case is required.

The purposes to be served by the *Campana* rule were outlined in the Opinion of the Court delivered by Justice ROBERTS (with Justices O'BRIEN and MANDERINO joining). The rule promotes both personal and societal interests, embodied in the Fifth Amendment ban on double jeopardy, by requiring all offenses arising from the same incident or transaction to be tried in one trial. The rule protects the defendant from being required to twice "run the gantlet" and confront the awesome resources of the state. It protects vital societal interests by avoiding piecemeal litigation, thereby conserving precious judicial and professional resources. *Commonwealth v. Campana,* 452 Pa. at 251-252, 304 A. 2d at 440, 441. These laudable purposes would clearly not be served by a retroactive application of the rule.[4]

---

[4] In his concurring opinion in *Ashe v. Swenson,* 397 U.S. 436, 90 S. Ct. 1189 (1970), Justice BRENNAN expressed the view that our Supreme Court adopted in *Campana.* It was his opinion that certain abuses inherent in allowing successive prosecutions could be best prevented by construing the "same offense" language of the

The cases in which double jeopardy principles have been given retroactive application have involved situations wherein a second prosecution or punishment was deemed to constitute jeopardy for the same offense. See *North Carolina v. Pearce,* 395 U.S. 711, 89 S. Ct. 2072 (1969); *Ashe v. Swenson,* 397 U.S. 436, 90 S. Ct. 1189 (1970); *Robinson v. Neil,* 409 U.S. 505, 93 S. Ct. 876 (1973); *Commonwealth v. Richbourg,* 442 Pa. 147, 275 A. 2d 345 (1971). Retroactive application of these decisions was required in order to enforce the traditional Fifth Amendment ban on double punishment and successive prosecutions for the *same offense.* The Supreme Court expressly stated that its decision in *Campana* was not intended to cover such situations. 452 Pa. at n. 5, 304 A. 2d at 435 n. 5. Because the rule is not designed to enforce traditional double jeopardy guarantees, and since the purposes of the rule would not be served by a retroactive application of the rule, we must consider the reliance by law enforcement officials on the old rule and the effect of retroactive application of the rule on the administration of criminal justice.

Before *Campana* was decided, the joinder of offenses in one criminal trial or indictment was not required. Pa. R. Crim. P. No. 219. Prosecutors could, moreover, rely upon decisions of the United States Supreme Court which held successive prosecutions for different offenses arising from the same transaction permissible. *Hoag v. New Jersey,* 356 U.S. 464, 467, 78 S. Ct. 829, 832 (1958); *Ciucci v. Illinois,* 356 U.S. 571, 573, 78 S. Ct. 839, 840 (1958). There was thus considerable justification for a prosecutor's reliance upon a rule of permissive, rather than compulsory joinder.

In view of this reliance, the effect of a retroactive application of *Campana* on the administration of crimi-

---

Fifth Amendment to mean "same transaction". By speaking in terms of the preventative value of the rule, it is reasonable to conclude that he favored prospective application of the rule.

nal justice would be considerable. If a misdemeanor and a serious felony were committed in the same transaction, and the misdemeanor was adjudicated first, retroactive application of *Campana* would accord the defendant a fortuitously light punishment for his acts, and a painless form of immunity from the more serious offense. Such a result would clearly be at odds with the ends of the administration of criminal justice and should not be countenanced absent compelling reasons to the contrary.

In *State v. Brown,* 497 P. 2d 1191 (Ore. S. Ct. 1972), the Oregon Supreme Court held that the protection against double jeopardy prohibits the state from bringing successive prosecutions for offenses arising from the same incident. That court refused, however, to apply the decision retroactively. *State v. Fair,* 502 P. 2d 1150 (Ore. S. Ct. 1972). For the aforementioned reasons, we believe that the same result should be reached in Pennsylvania.[5] We hold, therefore, that the rule of *Commonwealth v. Campana,* should be applied only in those cases in which the first prosecution is brought after the date that case was decided.

The judgments of sentence are affirmed.

---

[5] *Commonwealth v. Shadd,* 454 Pa. 148 (1973), does not require application of *Campana* to the instant case. *Shadd* held that the bar against tacit admissions should apply to all cases not finalized before the decision in *Miranda v. Arizona,* 384 U.S. 436 (1966), and that a judgment was not final where a case was on nunc pro tunc appeal. The rule against such admissions rests, in part, upon the inherent unreliability of that evidence [*Commonwealth v. Dravecz,* 424 Pa. 582 (1967)], a consideration not pertinent herein. Nor are we required to apply *Campana* to cases on direct appeal. Although such an application has been made [see, e.g., *Linkletter v. Walker,* 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965)], "there are no jurisprudential or constitutional obstacles to the rule" of prospective application, *Johnson v. State of New Jersey,* 384 U.S. 719, 733, 86 S. Ct. 1772, 1781 (1966), and appellant has presented no compelling reasons for applying *Campana* otherwise.

302

CONCURRING OPINION BY SPAETH, J.:

I agree with Part I of Judge HOFFMAN's opinion. Although I agree with the conclusion of Part II, I do not think it necessary to base that conclusion on constitutional principles. The Pennsylvania Supreme Court in its recent Addendum Opinion to *Campana* stated: "This Court views our May 4, 1973 judgments in Campana as state law determinations pursuant to our supervisory powers." 455 Pa. 622, 314 A. 2d 854 (1974). I take this to mean that the decision in *Campana* is to be regarded as in effect an amendment to the Rules of Criminal Procedure, Pa. Const. art. V, §10(a), §10(c), and so (in the absence of a statement to the contrary) prospective only.

JACOBS and CERCONE, JJ., join in this opinion.