United States ex rel. Jay R.
**KILHEFFER**
v.
**Frederick B. PLOWFIELD, Sheriff of Lancaster County.**

**Civ. A. No. 74–2347.**

United States District Court,
E. D. Pennsylvania.

Feb. 24, 1976.

David Rudovsky, Philadelphia, Pa., for petitioner.

Louise G. Herr, Mary Anne Matter, Asst. Dist. Attys., Lancaster, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Petitioner Jay Kilheffer, who stands convicted in the courts of Pennsylvania of obstructing an officer in the

execution of process, 18 P.S. § 4314 (Act of June 1939, P.L. 872, § 314, as amended),[1] superceded by 18 P.S. § 5104 (Act of December 1972, P.L. 1482, No. 334, § 1), has filed a counseled petition for habeas corpus pursuant to 28 U.S.C. § 2254.[2] The criminal charges against petitioner stem from a confrontation that occurred between a gathering of youths and the local police in a public park in Lancaster, Pa., on the evening of July 10, 1971. Two patrolling Lancaster police officers testified that they initially observed a group of youths in the park making a considerable amount of noise. Returning to the park a short time later they saw the same group cornering a park officer in a menacing manner. The officers ordered the crowd to disperse, at which time they observed the petitioner counting cadence as the members of the crowd returned to their cars. Several police officers further testified that Kilheffer and several others filled the night air with insults and obscene language, primarily directed at the police officers. When it appeared to the police that petitioner was defying their order to leave the park, he was placed under arrest for disorderly conduct. With a police officer gripping each of his arms, Kilheffer, attempting to break the officers' grip on his arms, forcefully shrugged his body and in so doing he fell to the ground. The officers then struck petitioner several times with their nightsticks in an effort to overcome his kicking and thrashing, and, having subdued him, they placed him in the police car.

For reasons that do not appear in the record no charges appear to have been lodged against Kilheffer for violating the local disorderly conduct ordinance.

He was, however, indicted for obstructing an officer in the execution of process and for assault and battery. He was tried by a jury and convicted only on the former count. An appeal to the Superior Court failed, and the Pennsylvania Supreme Court denied allocatur.

■ Kilheffer's petition alleges three violations of his federal constitutional rights in support of federal habeas relief. The only colorable claim presented is that his arrest for disorderly conduct under the Lancaster ordinance violated his First Amendment rights to freedom of speech and assembly, either because the ordinance is void on its face for overbreadth and vagueness or because his conduct itself was within the protected limits of the First Amendment. The state having failed to pursue the disorderly conduct charge, such a claim will not sustain federal habeas jurisdiction in this case because, even if his arrest is thereby rendered unlawful, he is not "in custody" as a consequence of *that* violation of his federal constitutional rights. 28 U.S.C. § 2241(c)(3). Kilheffer is "in custody" as a consequence of his conviction for obstructing an officer in the execution of process—for resisting arrest. In order to secure relief, he must prove that his present state custody for resisting arrest violates his federal constitutional rights.

In support of his theory petitioner urges upon us a simplistic formula for granting his petition. He characterizes his arrest for disorderly conduct as unlawful on three alternative grounds. Citing *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), and other recent decisions of the Supreme Court, Kilheffer contends that the Lan-

1. 18 P.S. § 4314 provides in pertinent part:
 "Whoever knowingly, willfully and forcibly obstructs, resists or opposes any officer . . . in making a lawful arrest without warrant, or assaults or beats any officer . . . in making a lawful arrest without warrant . . . is guilty of a misdemeanor . . . "

2. Federal habeas jurisdiction extends only to those petitioners who are "in custody." 28 U.S.C. § 2241(c)(3). Petitioner alleges that he is "subject to the order of Frederick B. Plow-

field, Sheriff of Lancaster County." While this is not an allegation of "custody" in the literal sense of the term, the decision of the Supreme Court in *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), held that a convicted petitioner, who is free on his own recognizance under an order of the state court staying the execution of sentence, is "in custody" for purposes of federal habeas jurisdiction. We therefore have jurisdiction over the petition.

caster disorderly conduct ordinance is void on its face as impermissibly overbroad and vague. He next contends that, even though the statute may be constitutionally unobjectionable on its face, gathering in a public park, insulting police officers and protesting police orders to disperse is protected conduct under the First Amendment. Finally he argues that the police officers lacked probable cause to arrest him for disorderly conduct. Upon finding that petitioner's arrest was unlawful for any one of these three reasons, it is maintained, we must order his release from state custody.

 Such a construction of the federal habeas statute is beyond our power. The fact that the state's original custody was unlawful does not of itself confer upon the federal courts the power to grant the writ. It is petitioner's *present* status in state custody that we must focus upon. As has been stated, Kilheffer's present "custody" is a product of his conviction for resisting arrest. The issue then is whether, assuming petitioner's arrest was unlawful, one has a federal constitutional right to resist an unlawful arrest.[3] We agree with the only reported decision which purports to answer that question that at least absent unusual circumstances there exists no such federal constitutional right. *United*

*States ex rel. Horelick v. Criminal Court,* 366 F.Supp. 1140 (S.D.N.Y.1973).

One had an undoubted common law right to resist an unlawful arrest. Indeed the Supreme Court has on two occasions referred to the existence of such a right in dictum. *John Bad Elk v. United States,* 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900); *United States v. DiRe,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Yet the right to resist unlawful arrest has undergone marked erosion in recent years. Numerous state appellate court decisions[4] and legislative enactments[5] have abrogated in its entirety the common law right to resist unlawful arrests. The Court of Appeals for the Third Circuit, holding that one has no right to resist the execution of a search warrant that is subsequently held invalid, expressly reserved decision on whether there was a right to resist an unlawful arrest. *United States v. Ferrone,* 438 F.2d 381, 390 n.19 (3d Cir. 1971). Striking a balance between the individual's interest in being secure from unlawful government intrusions and society's interest in the orderly resolution of disputes, as did the *Ferrone* court, we discern no meaningful distinction between the search warrant in *Ferrone* and the arrest here. One who suffers the imposition of an unlawful police search has the assurance that any evidence so acquired is rendered inadmissi-

**3.** Considerations of judicial restraint impel us to assume, without deciding, that the arrest was for various reasons unlawful. All three grounds asserted for holding the arrest unlawful would require us to pass upon the constitutionality of state action. Federal courts, of course, generally should refrain from unnecessarily deciding constitutional questions. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Resolution of any of the three constitutional issues underlying petitioner's claim that his arrest for disorderly conduct was unlawful would be ill-advised where, as here, our resolution of the ultimate issue in the case renders decision of preceding constitutional issues unnecessary. Particularly is this so in the case of Kilheffer's most vigorously stressed argument that the Lancaster *disorderly conduct ordinance is unconstitutional on its face.* Inasmuch as the strict scrutiny mandated by an overbreadth and vagueness

attack on a statute is such strong constitutional medicine, *see Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), we are especially hesitant to resolve the threshold constitutional issue on that ground. In assuming the unlawfulness of the arrest, we intimate no view on the merits of any of the claims.

**4.** *State v. Koonce,* 89 N.J.Super. 169, 214 A.2d 428 (App.Div.1965); *State v. Briggs,* 435 S.W.2d 361 (Mo.Sup.1968); *People v. Burns,* 198 Cal.App.2d 839, 18 Cal.Rptr. 921 (Super. Ct.App.Dep't.1961) (per curiam); *Commonwealth v. Beam,* 227 Pa.Super. 293, 324 A.2d 549 (1974).

**5.** R.I.Gen.Laws Ann. § 12–7–10 (1941); Del. Code Ann. Tit. 11 § 1905 (1951); N.H.Rev.Stat. Ann. 594:5; Cal.Penal Code § 834a (Supp. 1968); Ill.Rev.Stat. ch. 38, § 7–7 (1961); N.Y. Penal Law § 35.27 (McKinney Supp.1969).

ble in a subsequent criminal trial by the exclusionary rule. Likewise, any incriminating evidence obtained by exploiting an illegal arrest will be excluded in a subsequent criminal trial. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). And in any event damage remedies are available in the federal courts for violations of constitutional rights stemming from either an unlawful search or arrest. *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Beightol v. Kunowski,* 486 F.2d 293 (3d Cir. 1973); *Fisher v. Volz,* 496 F.2d 333 (3d Cir. 1974).

Weighing these significant protections afforded citizens against unlawful government intrusions into one's privacy against the social cost of condoning resistance to arrest, the balance ordinarily tips in favor of discarding the remnants of the common law right to resist unlawful arrest. Recognizing a blanket right to resist unlawful arrests would undermine the weighty interest of society in both the prevention of unnecessary violence and the orderly resolution of legal disputes. Vesting an arrestee with the right to resist quite clearly invites the police to respond with force and frequently the violence would entail the use of deadly weapons, a circumstance that ought never be encouraged.

The common law right to resist flourished in an era when weapons were less lethal and the consequences of an arrest fracas were less likely to be calamitous. Moreover, the right to resist developed in an era when procedural safeguards for the arrested were less elaborate. Given the recent flowering of the concept of due process of law, including the availability of reasonable bail, *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), the right to court-appointed counsel at an early stage of the criminal process, *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), and the right to a prompt judicial determination of probable cause following arrest, *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the arrestee who feels the police have overstepped their bounds is given fair assurance that the impact of the concededly onerous imposition of unlawful arrest will be minimized. Under such circumstances courts and legislatures have been understandably reluctant to recognize the former sweep of the common law right to resist unlawful arrest.[6]

█ We need not decide whether the demise of the common law right to resist unlawful arrest signals the adoption of a per se rule that under no circumstance does an arrestee have the right to resist. It may be that the circumstances surrounding an unlawful arrest suggest that the police have so flagrantly abused their authority in arresting persons for engaging in indisputably lawful activity, and that the resistance was so carefully calculated as to render negligible the risk that physical force need be resorted to, that a right to resist should be recog-

6. The nearest analogue in the law is the unquestioned principle that violation of an order issued by a court with jurisdiction is punishable by contempt, even though the legal principle underlying the court order may be erroneous or even unconstitutional. *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). Litigants, who might prefer to vindicate their position by resort to defiance, must instead seek relief from erroneous court orders by means of appellate review at the possible expense of delay. The resistance to unlawful arrest issue is not so nearly analogous to another category of cases in which the unlawfulness of a mere police order has been held to foreclose conviction for diso-

beying that order. *Wright v. Georgia,* 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963). Unlike the substantial procedural safeguards available to one who has been unlawfully arrested, a person who obeys an unconstitutional police order has lost forever his right to engage in the protected activity and to challenge the lawfulness of the police order. Only when one has been placed under arrest, it seems, must a person cease his defiance of unlawful police actions and place his fate in the hands of the judicial process. *United States ex rel. Horelick v. Criminal Court,* 366 F.Supp. 1140, 1151 (S.D.N.Y.1973). *See also* Note, *Defiance of Unlawful Authority,* 83 Harv.L.Rev. 626 (1970).

nized. Indeed the Third Circuit in *Ferrone* seems to leave open the possibility that the ordinary resisting arrest case could be treated differently from the case where:

> "the circumstances . . . would be such a provocation to a reasonable man that the seriousness of the offense of resistance ought to be mitigated as a result of such provocation."

438 F.2d 390 n.19. Whatever are the dimensions of possible exceptions to the general rule of no right to resist unlawful arrests, we hold that the conduct of the arresting officers in this case falls comfortably within the range of situations where an arrestee can be expected to yield to arrest and test its lawfulness in subsequent judicial proceedings.

Kilheffer, of course, cannot rest his case on establishing the existence of a common law right to resist arrest, since a prerequisite to federal habeas relief is proof that state custody is in violation of the federal constitution. A state is free to choose, as Pennsylvania apparently has, *see Commonwealth v. Beam,* 227 Pa.Super. 293, 324 A.2d 549 (1974), any approach to the issue of resisting unlawful arrest so long as that choice does not impinge on federal constitutional rights. The parties have referred us to no decision in which a court has recognized a constitutional right to resist unlawful arrest; the only court to consider the question rejected the argument. *Horelick, supra,* at 1150–52. Yet the principle that there is a limited constitutional right to resist unlawful arrests is not without support. One commentator has proposed that there is a constitutional right to resist *patently* unlawful arrests, on the theory that recognition of such a right is essential to the vindication of other constitutional rights including, in particular, the First Amendment. Chevigny, *The Right to Resist an Unlawful Arrest,* 78 Yale L.J. 1128 (1969). In the context of peaceful political demonstrations he notes, for example, that police could successfully circumvent the rule that persons who are unconstitutionally arrested for such conduct may not be convicted by unlawfully arresting them anyway and prosecuting those who offer any resistance. However, assuming, as we have, that Kilheffer's arrest was unlawful, there appears no basis in the record for finding that the arrest was patently illegal. Recognizing that the jury must have resolved most if not all credibility disputes in favor of the police officers, there is ample evidence to satisfy us that the decision to order the crowd of youths to disperse was within the range of allowable police discretion and certainly was not patently illegal. The police officers further had probable cause to believe that Kilheffer was violating the disorderly conduct ordinance by observing his conduct following their order to the crowd to disperse. And in no sense can the officers' reliance on the disorderly conduct ordinance as the basis for arresting petitioner be deemed a flagrant abuse of police authority. The police officers cannot fairly be charged with knowledge of such esoteric judicial doctrines as overbreadth and vagueness. *See State v. Briggs,* 435 S.W.2d 361 (Mo.Sup.1968).

In short, even if we indulge Kilheffer's petition with assumptions that take us to the unblazed frontiers of constitutional law, the police conduct that we have assumed is unlawful does not approach the level of patent illegality that would trigger a federal constitutional right to resist arrest under any theory.

Kilheffer's second asserted ground for relief is that he was deprived of due process of law under the Fifth [sic] Amendment and equal protection of the laws under the Fourteenth Amendment because he was convicted of resisting *lawful* arrest without consideration of the lawfulness of the arrest. Despite the fact that this ground is not discussed in the briefs, we shall dispose of it on its merits. The gist of petitioner's claim seems to be that the due process clause of the Fourteenth Amendment forbids the states from indulging in any interpretation of state law which, while not violative of any express provision of the federal constitution, is deemed to be fun-

683

damentally unfair. In this case, even though there may be no federal constitutional barrier to a state punishing those who resist unlawful arrests, the Commonwealth of Pennsylvania has expressly undertaken to punish only those who resist *lawful* arrests. Therefore, petitioner seems to argue, the principles of fair play and strict construction of criminal statutes embodied in the due process clause mandates that the state at a minimum find that the arrest was indeed a lawful one before subjecting a person to criminal sanctions for violating the statute. Assuming that such a limitation on state power is embodied in the due process clause of the Fourteenth Amendment, petitioner's argument is unsupported by the record. Since the state trial judge rejected Kilheffer's points for charge touching upon First Amendment issues, it is clear that the state has concluded that defendant's conduct was not protected by the First Amendment and that the ordinance under which he was arrested was not facially void for overbreadth or vagueness. The jury on the other hand found that the police officers reasonably believed that the disorderly conduct ordinance was being violated by Kilheffer (N.T. 162), thus establishing probable cause as a matter of law. It appearing, therefore, that the state courts have reasonably concluded that the literal terms of the statute punishing only resistance to *lawful* arrest have been complied with, we conclude that there is nothing fundamentally unfair in a state convicting a person of resisting lawful arrest in the circumstances of this case. This conclusion, of course, does not foreclose the federal inquiry that we made herein into the lawfulness of the arrest under the aegis of specific procedural guarantees of the Bill of Rights made applicable to the states through the Fourteenth Amendment. Further, in the absence of an allegation that Kilheffer is part of an identifiable class of persons who have been invidiously dis-

criminated against in resisting arrest cases, his equal protection argument is without foundation.[7]

Accordingly the petition is denied.

---

7. The third and final ground alleged by petitioner for habeas relief is that the state conviction subjected him to double jeopardy. This contention is unbriefed and totally unsupported by the record.