323 F.2d 90
 Allen M. WILLIAMS, also known as Clyde Walter Huntsworth,
and Fred Westley Anderson, Appellant,
v.
UNITED STATES of America, Appellee.
Richard Charles MEIER, also known as George E. Richmond, Appellant,
v.
UNITED STATES of America, Appellee.
 Nos. 7257, 7258.
 United States Court of Appeals Tenth Circuit.
 Sept. 30, 1963, Rehearing Denied Oct. 18, 1963.
 
 Vincent A. Ross, of Ross & Buge, Cheyenne, Wyo., for appellants.
 Robert N. Chaffin, U.S. Atty., Cheyenne, Wyo. (Leroy V. Amen, Asst. U.S. Atty., Cheyenne, Wyo., with him on the brief), for appellee.
 Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 The appellants, Williams and Meier, were convicted of transporting a 1961 Cadillac automobile from Portland, Oregon to Laramie, Wyoming, knowing the same to have been stolen, in violation of 18 U.S.C. 2312. They were arrested in Laramie by state officers without a warrant, who then searched the automobile and took into their possession a quantity of personal effects belonging to the defendants. A few days later, while the defendants were still held in state custody, an agent of the F.B.I. made a more thorough search and discovered concealed in the trunk paneling of the Cadillac a number of incriminating articles. The principal assignments of error presented here relate to the admission in evidence of the results of these two searches.
 
 
 2
 Shortly after noon on May 11, 1962, Williams appeared at the office of the County Clerk of Albany County, Wyoming, presented a Georgia registration and bill of sale for a 1962 Cadillac automobile, and requested that he be issued a Wyoming title. He advised the clerk that he was Clyde W. Huntsworth, the person named in the bill of sale and the Georgia registration, and whose signature appeared thereon. Williams said he had arrived in Laramie a short time before and wanted the title because he expected to live in Wyoming. The vehicle was not available for inspection, and Williams was told that the matter must be cleared through the County Sheriff's office before a Wyoming title could be issued. When he appeared at the Sheriff's office, Williams told the Undersheriff he was traveling with a Fred W. Anderson in a blue-green 1961 Oldsmobile with a Washington license plate, which was parked in front of the Court House. When asked, he said that his identification cards and wallet were in that car. The Denver office of the National Auto Theft Bureau was then requested to obtain information as to the title of the 1962 Cadillac. Williams agreed to remain at the Sheriff's office until the report was received. During the afternoon the National Auto Theft Bureau advised that the 1962 Cadillac for which Williams attempted to obtain a Wyoming title had not been reported stolen, but was owned by a Chicago resident and was white in color. Williams claimed that he had bought the vehicle in Georgia for $6200.00, and that it was stored in New York at an address he did not know, and was black in color. At the time, Williams had in his possession an Oregon driver's license issued to Fred W. Anderson, and a Georgia driver's license issued to Fred Westley Anderson. The Undersheriff then set out to locate the Mr. Anderson with whom Williams said he was traveling, and the 1961 Oldsmobile. An automobile of this description was found near the Court House but it was in the possession of persons having no connection with Williams. A person (Meier) who had been seen walking around the Court House looking up at the jail was observed near a white 1961 Cadillac parked on the street some distance from the Court House, As he walked away from that automobile, Meier was stopped and was questioned by the Undersheriff. At that time he gave his name as George E. Richmond. He said the 1961 Cadillac, which bore a Nebraska license, belonged to 'a fellow by the name of Hamilton with whom I came to Laramie.' He produced four unmarked keys which fit the Cadillac. The Undersheriff testified that when he first spoke to him, Meier made what appeared to be a threatening gesture by putting his hand inside his coat as if to reach for a weapon. Later a pencil-type tear gas gun was found in his possession. Some time later Williams and Meier were charged in the state court.[1]
 
 
 3
 While Williams and Meier were held by the state officers an agent of the F.B.I. made an investigation to ascertain the ownership of the 1961 Cadillac in which they were traveling. He obtained the true identification numbers of the automobile and made a thorough search of its interior. Secreted in the paneling of the trunk he located bags containing material which might be useful in the theft of automobiles, including a large number of master keys which fit nearly all General Motor cars.[2] It was learned through the investigation that the 1961 Cadillac belonged to J. S. Lunsford of Portland, Oregon. Federal charges were then filed against the two and they were taken into custody by the United States Marshal. Lunsford testified at the trial that the car had been stolen from his garage on the night of April 27, 1962. Williams and Meier had been in Portland and left the night the car disappeared.
 
 
 4
 When the case came on for trial, the defendants moved to suppress the evidence obtained from the 'stolen vehicle' alleging in writing that it was 'illegally seized without a warrant.' This motion was not presented to the court, and the defendants proceeded to trial without objection. During the trial an objection was made to the admission of the evidence found by the state officers in the automobile, upon the ground that the state arrest was without probable cause and the search and seizure by the state officers was illegal.[3] The court heard evidence in the absence of the jury, and found that the original arrest was made on probable cause and overruled the objection.[4]
 
 
 5
 We agree with the trial court that from all the facts and circumstances, the state officers had probable cause to believe that Williams and Meier had committed a felony, and that the search made incident to that arrest was lawful. Mere suspicion, of course, does not constitute probable cause for an arrest. Wong Sun v, United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. It is not necessary, however, that an arresting officer be possessed with evidence suffcient to establish guilt. Probable cause deals with probability, as said in Brinegar v. United States, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879:
 
 
 6
 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' * * * Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) suffcient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.'[5] See Ker v. California, supra; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; State v. George, 32 Wyo. 223, 231 P. 683.
 
 
 7
 At the suggestion of Williams, the Undersheriff went to check on the 1961 green Oldsmobile. He was then continuing an investigation that Williams had requested him to make relative to the 1962 Cadillac. By this time, the officer knew that this car was not owned by Williams, and was not white, or stored in New York as stated by Williams. From the information which the Undersheriff had, it was quite obvious that the Georgia papers were not genuine and that the Wyoming title which Williams attempted to obtain was not to be used legally in connection with the vehicle described in those papers. When Meier was found with keys that fit the 1961 Cadillac, he gave a name which did not correspond to that given by Williams to his traveling companion, and he in turn gave as the name of his traveling companion one which did not correspond with the name furnished by Williams. After his questioning of Meier, the officer could reasonably conclude that Williams did not want him to locate Meier or the car in which they were traveling and that the false information as to the 1961 Oldsmobile was a ruse to divert him away from Meier and the 1961 white Cadillac. We are satisfied that the Undersheriff had reasonably trustworthy information sufficient to warrant his belief that an offense had been or was being committed. Moreover, with the possible exception of the Cheyenne newspaper on which the name 'Clyde W. Huntsworth' was written five times on the margin, there was nothing incriminating about the articles seized by the state officer and their admission in evidence was not prejudicial.
 
 
 8
 The search by the F.B.I, agent made several days after the arrest by state officers and while the defendants were confined in jail, could not be sustained as incident to the original lawful arrest, Sirimarco v. United States, 10 Cir., 315 F.2d 699, cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032, but the defendants did not seek to suppress this evidence before the trial by motion, as contemplated by Rule 41(e), Fed.R.Crim.Proc., and did not, during the trial, object to its admission in evidence upon the ground that it was obtained through an unlawful search.[6] The legality of this search was never considered by the trial court. Accordingly, the issue is not before us for review. Gendron v. United States, 8 Cir., 295 F.2d 897. Furthermore, throughout the proceedings the defendants expressly disclaimed any interest, proprietary, possessory, or otherwise, in any of the articles seized by the F.BI. agent which were incriminating.[7]
 
 
 9
 It is well established in this circuit, and elsewhere, that the right to protection against unreasonable search and seizure is personal, and a defendant in a criminal case who claims no proprietary or possessory interest in the seized property has no standing to object to the method of seizure. Baskerville v. United States, 10 Cir., 227 F.2d 454; Wilson v. United States, 10 Cir., 218 F.2d 754, and cases therein cited. Cf. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233. This rule is particularly applicable where the property seized was taken from a stolen automobile to which the defendants had no title or legal right to possession. United States v. Serrano, 2 Cir., 317 F.2d 356; Anno. 78 A.L.R.2d 246, 8; Anno. 50 A.L.R.2d 531, 10; Jones v. United States, supra, recognize this principle.
 
 
 10
 During the trial the F.B.I. agent and the Special Agent of the National Auto Theft Bureau were permitted to testify, over the objection that it was hearsay, as to what they had learned through their investigation relative to the ownership of the stolen 1961 Cadillac, and the ownership of the vehicles for which the license plates, registrations, bills of sale and identification plates had been found hidden in the trunk panel of the stolen Cadillac. . part of their testimony was based upon records of the National Auto Theft Bureau and reports prepared by other agents who were not present or from information which had been obtained through telephone and teletype communications with branch offices or other agents, and not upon personal knowledge of the witness. Assuming that the evidence was hearsay, its admission was not prejudicial. The stolen car was identified by the testimony of its true owner. There was no issue as to the identity of the other items, and we are convinced that their admission in evidence did not affect substantial rights of the defendants. Rule 52(a), Fed.R.Crim.Proc. There was a suggestion during the trial that this evidence was admissible under the provisions of the Business Records Act, 28 U.S.C. 1732. The government did not urge that point here, but generally statements and hearsay information collected in an investigation for the purposes of the trial of a case are not business records within the meaning of the statute. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645.
 
 
 11
 We have considered the other assignments of error and find them to be without merit.
 
 
 12
 Affirmed.
 
 
 
 [1]
 Meier was charged with carrying a concealed weapon and carrying a concealed weapon with intent to assault. He pleaded guilty to the former charge and the latter was dismissed. Williams was charged with forgery and forgery with intent to defraud, both of which were dismissed before defendants were released to federal custody
 
 
 [2]
 A black leather bag and two paper bags, or envelopes, were found. The leather bag contained a piece of black cloth, a pen flashlight, a box of tear gas shells, a wire to which was attached a pen flashlight and 65 master keys for General Motor automobiles, a tube of graphite powder, an altered socket wrench, a wire tool used for opening car doors and a pair of black gloves. One of the paper bags contained 20 metal cutting dies for stamping numbers and letters in metal
 The other bag contained a 1961 Georgia license plate, a 1961 Georgia title registration for that license, a bill of sale for the described vehicle, and an identification plate from a 1961 Cadillac bearing the same identification numbers. That car belonged to a person living in Detroit, Michigan. It also contained Oregon license plates, registration, a Georgia bill of sale, and a vehicle identification plate for a 1962 Thunderbird, issued to a Fred Anderson. This vehicle belonged to a person living in Cleveland, Ohio. The search also revealed two applications for vehicle titles to the West Virginia Department of Motor Vehicles.
 
 
 [3]
 It is now settled that evidence obtained through an unreasonable search and seizure by state officers is not admissible over a timely objection in a federal criminal trial. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669. Cf. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726
 
 
 [4]
 When defendants' counsel had completed the showing on his objection, the court inquired as to the nature of the motion under consideration, to which counsel replied: 'My motion is to suppress all the testimony that has been presented here by Mr. Lankford as to what the boys did, what they supposedly have done, what items were taken out of this car and the evidence they have taken out of this car, that it has been taken out, first, without a warrant, without due process of law.'
 
 
 [5]
 In Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, the court also said:
 'These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens to the mercy of the officers' whim or caprice.'
 
 
 [6]
 The objections made to the introduction of this evidence is illustrated by the following:
 'Q. Now, relative to Government's Exhibit 44, which has already been entered into evidence and is represented by a Georgia license plate 15A1194, you testified a few minutes ago as to your investigation and ownership of that vehicle. Now, relative to these Government exhibits I will ask you if your investigation has revealed the owner of the vehicle referred to in the Government exhibits--
 MR. ROSS: To which we object, Your Honor; not material, no foundation laid and anything he is liable to say is hearsay unless foundation is laid.'
 
 
 [7]
 Among the articles seized was a title registration and license plates for a Thunderbird automobile Williams said he had given to Hamilton, and that he did not know that they were in the 1961 Cadillac. The Thunderbird registration was issued to Fred Anderson, not Williams