## ZACHARIAH B. RODGERS *v.* STATE OF MARYLAND

[No. 640, September Term, 1975.]

*Decided June 25, 1976.*

The cause was argued before MORTON, DAVIDSON, MOORE and MELVIN, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Geraldine Kenney Sweeney, Assistant Public Defender,* on the brief, for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Leonard Eiswert, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, Zachariah B. Rodgers, was charged with possession of a deadly weapon, resisting arrest and assault.

The assault charge was apparently nolle prossed. At the conclusion of the trial in the Criminal Court of Baltimore (Karwacki, J., presiding), a jury found the appellant not guilty of possessing a deadly weapon but guilty of resisting arrest. He received a three-year sentence.

The appellant contends in this appeal that the trial judge committed reversible error by refusing to grant his motion for judgment of acquittal and by improperly instructing the jury.

The record indicates that on July 7, 1974, at about 1 p.m., Officers Fred Morgan and Carl Coates, while on routine uniformed patrol, received a call requesting that they assist another police unit in serving an arrest warrant. They were told that the warrant had been verified and that the suspect's name was Zachariah Rodgers. Shortly after their arrival at the location to which they had been summoned, the officers encountered the appellant, who matched the description which had been given them of the person named in the warrant. Officer Coates testified that he told the appellant that an arrest warrant had been issued for a Zachariah Rodgers. When asked if his name was Zachariah Rodgers, the appellant answered that his name was Barry.[1] He was asked to accompany the officers while they investigated this discrepancy. When he willingly complied, they neither searched nor handcuffed him. As the officers were walking toward the police car with the appellant between them and Officer Coates holding appellant's elbow with his hand, the appellant turned and grabbed Officer Coates. They struggled briefly until Officer Morgan intervened by striking the appellant with his night stick. The appellant was then handcuffed and placed in the police car.

In the course of the struggle, Officer Coates was cut with a straight-edged razor which was introduced into evidence.[2]

---

**1.** The appellant's full name is Zachariah Barry Rodgers. The name on the warrant was Barry Rodgers, although the name given to the police officers over the police radio was Zachariah Rodgers.

**2.** The appellant denied possession of the razor and suggested at the trial that Officer Coates' wounds resulted from the debris lying on the ground. The appellant also stated that he first saw the razor when he was placed in the police car after the altercation.

As a result, Officer Coates was treated for superficial lacerations. The appellant received nine stitches for a head wound. Although the appellant's version of the incident differed substantially from that of the police officers, he admitted that he knew he was under arrest before the altercation occurred.

The arrest warrant which led to the appellant's apprehension charged that the appellant:

> "Unlawfully did assault one Lillie Clark, via telephone, by threatening then and there to do bodily harm unto her, in Balto. City, Md. on 5 July 74."

The appellant argues that since "assault by telephone" is not a crime, the arrest warrant was defective; that an arrest pursuant to a defective warrant is illegal; and that appellant, therefore, had a right to use reasonable force in resisting the arrest. He contends, accordingly, that it was error to deny his motion for judgment of acquittal.

In addressing the issue, we assume, without deciding, that (1) the arrest warrant was, in fact, defective and (2) the force used in resisting the arrest was not unreasonable.

This Court stated in *Jordan v. State*, 17 Md. App. 201, 206-07 (1973):

> "Maryland always has adhered to the common law rule that one who is illegally arrested may use reasonable force to effect his escape. *Sugarman v. State*, 173 Md. 52, 57, 195 A. 324 (1937). See *Soles v. State*, 16 Md. App. 656. We note, however, that in recent years the ancient common law rule observed in Maryland and in a majority of American jurisdictions has been criticized by some commentators, has been changed by adoption of the Uniform Arrest Act in four States, and has been altered by judicial decision in one jurisdiction. *State v. Koonce*, 89 N.J. Super. Ct. 169, 214 A. 2d 428 (1965). In the *Koonce* case, the New Jersey court concluded that police officers attempting, in

good faith, although mistakenly, to perform their duties in effecting an arrest 'should be relieved of the threat of physical harm at the hands of the arrestee.' *Id.* at 436.

We will not join the debate over whether the rule that a person has a right to use reasonable force in resisting an *illegal* arrest still has a place in today's heavily urban society." [3] [Footnotes omitted.]

*See Jenkins v. State,* 232 Md. 529 (1963); *Kraft v. State,* 18 Md. App. 169 (1973); *Matter of Nawrocki,* 15 Md. App. 252 (1972).

The decisions of the Court of Appeals which place Maryland squarely within the common law rule that one may use reasonable force to resist an illegal arrest appear to have involved warrantless arrests. *See, e.g., Sharpe v. State,* 231 Md. 401 (1963); *Sugarman v. State,* 173 Md. 52 (1937). Whether the common law rule prevails in this state where the arrest is made upon a warrant which later turns out to be defective is an issue apparently not heretofore presented to the Court of Appeals. It would seem, therefore, that this Court may take a fresh view of the law with respect to the right of an individual to resist an arrest with reasonable force where the arrest is upon a warrant even though it is found later to be defective.

We think the difference between an arrest pursuant to a warrant and a warrantless arrest is substantial. In the latter case, the decision to effectuate an arrest involves a judgment by the police based upon the facts within their knowledge. On many occasions the decision to arrest must be arrived at hurriedly, sometimes almost intuitively, and rarely is there an opportunity to make a studied appraisal of the quality

3. At the present time the common law rule has been abolished by the legislature in at least six States: California, Delaware, Illinois, New Hampshire, New York and Rhode Island. *See* Chevigny, *The Right to Resist an Unlawful Arrest,* 78 Yale L.J. 1128, 1132, n.30 (1969). The common law rule has been abolished by judicial fiat in at least three States: Alaska (Miller v. State, 462 P. 2d 421 (1969)); Florida (Daniel v. State, 132, So. 2d 312 (1961) (by implication)); and New Jersey (State v. Koonce, 214 A. 2d 428 (1965)).

and quantity of the factors supporting the judgment. On the other hand, where a warrant is the basis of the arrest, it presumably has been issued in the quiet atmosphere surrounding the issuing judicial officer where he has had an opportunity to reflect upon and measure the facts presented to him before reaching his decision to issue the arrest warrant. Once it is issued, the police have no alternative than to perform the ministerial duty of executing the judicial officer's order.[4]

In making what we think is a valid distinction between the two types of arrest, we recognize that it necessarily involves an evaluation of highly esteemed, competing social values. On the one hand, a person who is provoked into resisting an arrest because it is illegal should not be punished with a conviction for such an affront to his right to be free from unlawful police conduct. At the same time, a fundamental purpose of our legal system is the promotion of orderly conduct and the discouragement of violence. The resolution of the confrontation of these values was well articulated in *State v. Koonce*, 89 N.J. Super. Ct. 169, 214 A. 2d 428, 435-36 (1965):

> "But it seems to us that an appropriate accommodation of society's interests in securing the right of individual liberty, maintenance of law enforcement, and prevention of death or serious injury not only of the participants in an arrest fracas but of innocent third persons precludes tolerance of any formulation which validates an arrestee's resistance of a police officer with force merely because the arrest is ultimately adjudged to have been illegal. Force begets force, and escalation into bloodshed is a frequent probability. The right or wrong of an arrest is often a matter of close debate as to which even lawyers and judges may

---

4. The arrest warrant here involved contained the following admonition to the police: "You are, therefore, commanded to arrest the person charged and to bring him before me or some other judicial officer as required by law. Hereof fail not or leave you then and there the warrant."

differ. In this era of constantly expanding legal protections of the rights of the accused in criminal proceedings, one deeming himself illegally arrested can reasonably be asked to submit peaceably to arrest by a police officer, and to take recourse in his legal remedies for regaining his liberty and defending the ensuing prosecution against him. At the same time, police officers attempting in good faith, although mistakenly, to perform their duties in effecting an arrest should be relieved of the threat of physical harm at the hands of the arrestee."

The *Koonce* court then announced, at 436:

"* * * we declare it to be the law of this State that a private citizen may not use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances obtaining."

In *Koonce*, no distinction was made between a warrantless arrest and one based upon a warrant. This Court, of course, is not free to make this all-inclusive decision in view of the state of the law as heretofore enunciated by the Court of Appeals. We do believe, however, we are free to make the distinction and to formulate a different rule with respect to arrests upon warrants, without doing violence to the controlling prior decisions of the Court of Appeals.[5]

In formulating a rule of law applicable to situations involving resistance to an arrest sought to be accomplished by a warrant later found to be defective, we think the language of the Supreme Court of the United States in *Walker v. City of Birmingham*, 388 U. S. 307 (1967) is pertinent and instructive. There, a group of citizens were enjoined from participating in a civil rights march. Since the participants believed the injunction and ordinance upon

---

[5] Indeed, several states have made such a distinction. *See* Annot., 44 A.L.R.3d 1078 (1972); Annot., 10 A.L.R.3d 1146 (1966).

which it was based were unconstitutional, they ignored the injunction and demonstrated. The Supreme Court held that even if the injunction and underlying ordinance were unconstitutional, the participants had to test its legality in the courts, not in the streets. The Court reasoned, at 320-21:

"The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. This Court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." [Footnote omitted.]

The Uniform Arrest Act and the Model Penal Code recommend abolition of the common law rule in its entirety. Section 5 of the Uniform Arrest Act provides:

"If a person has reasonable ground to believe that he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest."

While Maryland has not adopted the Uniform Arrest Act, the quoted statement does, in our opinion, suggest some of the essential ingredients that should be found in the law of arrest as it operates in our current society.

In the case at bar, neither the appellant nor the police officers saw the warrant before the arrest. Clearly, the appellant did not resist the arrest because he believed the warrant was defective. To permit his conviction to turn upon whether in hindsight the warrant is adjudicated defective, a highly complex procedure in itself, when he could not have

known it was defective is to permit an uninformed street decision by an accused to take the place of a decision by the appointed and informed adjudicative officers of the law. Such a procedure cannot be sanctioned at the cost of violent injury to police officers fulfilling the command of a warrant.

Without assaying here to articulate a hard, fast, all encompassing rule, we are of the opinion that the appellant was not justified in resisting the arrest after the police officers advised him that there was a warrant for his arrest and requested him to accompany them for the purpose of establishing his identity as the individual named in the warrant. The officers were in uniform and sought to accomplish the arrest without force.

The evidence showed that appellant was walking between the officers, with Officer Coates holding his elbow, when appellant initiated the attack upon Officer Coates. Thus, we have a factual situation where the arrestee knew he was being accosted by authorized police officers; he had been advised by them that a duly authorized warrant had been issued for his arrest; and as a reasonable man, he should have known that it was their duty, pursuant to the warrant, to arrest him even though the warrant might thereafter be determined by a judicial officer to be legally defective. The arrestee, here the appellant, has no legal right in these circumstances to resist the arrest with force. Otherwise stated, an individual may not lawfully use force to resist an arrest where he has been advised by authorized police officers that a warrant for his arrest has been duly issued and that, pursuant to the command of the warrant, the officers are endeavoring to effect his arrest, even though it is later determined at a judicial hearing the warrant was defective. We find no error in the trial judge's refusal to grant the appellant's motion for judgment of acquittal.

The appellant also argues that the trial judge's instructions "precluded the jury from considering the only defense available to the Appellant." In view of our holding that the appellant was not entitled to assert the illegality of the arrest warrant as a defense in the factual circumstances

here, we find that the judge's instructions to the jury were not prejudicial to the appellant's rights.

*Judgment affirmed.*