**Michael J. SANDBORN, Appellant (Appellant/Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Appellee/Plaintiff).**

No. 86–226.

Supreme Court of Wyoming.

April 10, 1987.

State Public Defender Program: Leonard Munker, State Public Defender, and Julie D. Naylor, Appellate Counsel; Wyoming Defender Aid Program: Gerald M. Gallivan, Director, and Michelle R. Whetsel, Student Intern, for appellant.

A.G. McClintock, Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Terry L. Armitage, Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellant Michael Sandborn was convicted in county court of driving while under the influence of intoxicating liquor, in violation of § 31–5–233, W.S.1977, and operating a motor vehicle without a valid driver's license, in violation of § 31–7–106, W.S. 1977. He was fined $525 plus costs and sentenced to 30 days in jail. The sentence was suspended, and appellant was placed on probation for a period of six months.

We affirm.

Appellant asks this Court to consider the following issues:

"I. Whether or not the warrantless arrest of appellant in his home for a misdemeanor, absent exigent circumstances, violates appellant's Fourth Amendment right against unreasonable searches and seizures.

"II. Whether or not the warrantless arrest of appellant in his home, for a misdemeanor, violates W.S. § 7–2–103 'Arrests Without Warrants.' "

On December 21, 1985, at approximately 2:30 a.m., Deputy Michael Ashlock of the Sheridan County sheriff's office received a report of an accident involving property damage at a residence located in Story, Wyoming. Upon his arrival at the scene approximately 30 minutes later, Deputy Ashlock observed an unoccupied pickup truck in the ditch off the right side of the road. Its front end was smashed into the fence. The deputy questioned Louis Galloway, the owner of the property and the individual who reported the accident. On the basis of the information obtained from Galloway and a vehicle registration check,

Deputy Ashlock drove to appellant's home just east of the Galloway property. There, he met appellant's wife who was leaving to go talk to Galloway. Deputy Ashlock accompanied appellant's wife back to the Galloway residence where she and Galloway discussed the damaged fence. Deputy Ashlock then drove her back to her house. At this point, he asked her for permission to enter the house and talk to appellant. Appellant's wife consented and led the deputy to the room where appellant was sleeping. Deputy Ashlock awakened appellant and, after observing and questioning him, placed him under arrest. Appellant was taken to the Sheridan County sheriff's office where he submitted to a breathalyzer test.

On January 14, 1986, prior to trial, appellant filed a motion to suppress the results of the breathalyzer test. A hearing was held on the motion on February 14, 1986, at which time appellant argued that Deputy Ashlock's nighttime warrantless entry into his home violated the Fourth Amendment's guarantee against unreasonable searches and seizures and, consequently, any evidence obtained therefrom must be suppressed. Following the testimony of witnesses and argument of counsel, the county court informed the parties that the determinative issue was whether Deputy Ashlock had consent to enter appellant's home. The court took the matter under advisement in order to consider *Welsh v. Wisconsin,* infra, the authority relied upon by appellant in support of his claim that the entry was unlawful. On March 19, 1986, apparently having found *Welsh v. Wisconsin* unsupportive of appellant's claim, the county court denied appellant's motion to suppress.

The case was tried before the county court on June 11, 1986, and appellant was found guilty and sentenced on both charges. Appellant appealed to the district court on June 13, 1986. From the district court's order affirming the county court's judgment, appellant now appeals to this Court.

## I

In his first argument before this Court, appellant claims that his arrest violated the Fourth Amendment in that exigent circumstances did not exist justifying a nighttime warrantless entry into his home. In support of his claim, appellant cites *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), wherein the United States Supreme Court held that the Fourth Amendment prohibits the police from making a warrantless nighttime entry into a person's home absent exigent circumstances. Appellant's reliance on *Welsh v. Wisconsin* is misplaced. In that case, there was no determination by the trial court as to whether the police obtained consent to enter the suspect's home. The United States Supreme Court assumed that there was no valid consent to enter merely for the purposes of deciding the question of exigent circumstances. However, upon finding that exigent circumstances did not exist justifying the warrantless nighttime entry, the Supreme Court remanded the case to the state court for determination of whether the arrest was justified on the basis that the police validly obtained consent to enter the defendant's home. Thus, the rule established in *Welsh v. Wisconsin* is applicable only where the police enter a person's home without a warrant or without consent.

Because we hold in the present case that Deputy Ashlock validly obtained consent to enter appellant's home, we find it unnecessary to address the question of whether exigent circumstances existed justifying the entry.

The test for determining whether consent to enter was validly obtained is well established.

"[T]he Fourth and Fourteenth Amendments require [the state to] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances * * *."

*Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973).

In the present case, Deputy Ashlock gave the following uncontradicted testimony at the suppression hearing:

"Q Did you have any conversation with [Mrs. Sandborn] on the way down to the Sandborn residence?

"A When we were returning to the Sandborn residence?

"Q Yes.

"A Yes. I asked her if I could get permission to enter the house, and she said that wouldn't be a problem, and I asked her if Mr. Sandborn went to sleep, and she said that she thought yes, that he was asleep, and I asked if he would be a problem in waking up, and she stated that she did not think so and that she would help me.

"Q Did you tell her what you planned on doing if you were allowed to go in?

"A Yes. That was all explained in front of her and Mr. Galloway at Mr. Galloway's residence about signing the citation for DWI, that I would have to observe him myself under conditions like this before I could do anything.

"Q Did you then return to the Sandborn residence?

"A Yes, sir.

"Q And upon your arrival there, what did Mrs. Sandborn do?

"A She invited me in after I asked if I could enter the house, and we went in through the front door into the living room and then to our left, which there is a bedroom in that section of the house where we found Mr. Sandborn in bed asleep.

"Q And after that time—when she opened the door to the house, did she stand aside and let you go in first or did she go in first?

"A She went in, held the door and then I entered in, and she shut the door behind me and then we went to the bedroom."

Thus, Deputy Ashlock's uncontroverted testimony demonstrates that:

1. He asked appellant's wife for permission to enter the house and talk to appellant;

2. Appellant's wife was informed by Deputy Ashlock prior to giving her consent that appellant would be arrested if he appeared to be intoxicated; and

3. Appellant's wife gave Deputy Ashlock permission to enter and led him to the room where appellant was sleeping. There was no showing that Deputy Ashlock used or threatened to use force to gain entry into the home. Nor was there any evidence indicating that Deputy Ashlock coerced appellant's wife into allowing him to enter the house to talk to appellant. Finally, there was no evidence presented that appellant's wife indicated in any way that she was reluctant to allow Deputy Ashlock to enter her home to question appellant. Having considered the totality of the circumstances, we hold that the county court properly denied appellant's motion to suppress on the ground that Deputy Ashlock validly obtained consent to enter appellant's home.

## II

Appellant's second and final claim on appeal is that his arrest violates § 7–2–103(a), W.S.1977. That subsection provides as follows:

"(a) A peace officer may arrest a person without a warrant and detain him until a legal warrant can be obtained when:

"(i) Any criminal offense is being committed in his presence by the person to be arrested; or

"(ii) He has reasonable grounds to believe that a felony, as defined by section 6–2 [§ 6–10–101] of the statutes has been committed and he has reasonable grounds for believing that the person to be arrested has committed it; or

"(iii) A misdemeanor, as defined by section 6–2 [§ 6–10–101] of the statutes has in fact been committed and the peace officer has reasonable grounds for believing that the person to be arrested has committed it and has reasonable grounds for believing that the person:

"(A) Will not be apprehended unless immediately arrested; or

"(B) May cause injury to himself or others or damage to property unless immediately arrested; or

"(C) May destroy or conceal evidence of the commission of such misdemeanor."

In reliance upon that provision, appellant argues that his arrest is invalid because the offense, driving while intoxicated, was not committed in Deputy Ashlock's presence and because there was no showing that Deputy Ashlock had reasonable grounds for believing that, unless immediately arrested, appellant would not be apprehended, might cause injury to himself or others or damage to property, or might destroy or conceal evidence of the offense.

Appellant's argument fails to consider § 31–5–1204(a), W.S.1977, which provides:

"(a) The authority of a police officer to make an arrest is the same as upon an arrest for a felony when the officer has reasonable and probable grounds to believe that the person arrested has committed any of the following offenses and the manner of making arrests shall be as in misdemeanor cases:

(i) Negligent homicide or homicide by vehicle;

"(ii) Driving or being in actual physical control of a vehicle while under the influence of alcohol or any substance as prohibited by W.S. 31–5–233;

"(iii) Failure to stop, failure to give information or failure to render reasonable assistance, in the event of an accident resulting in death or personal injuries as prescribed in W.S. 31–5–1101 and 31–5–1103;

"(iv) Failure to stop or give information in the event of an accident resulting in damage to a vehicle or other property as prescribed in W.S. 31–5–1102 through 31–5–1104;

"(v) Reckless driving;

"(vi) Racing on the highway; or

"(vii) Willfully fleeing from or attempting to elude a police officer."

This provision clearly authorizes a police officer to arrest a person for the offenses described therein on the same grounds as those which authorize him to make felony

arrests. This Court articulated the grounds for felony arrests long ago when we stated:

"[A] peace officer may arrest without a warrant, one whom he has reasonable or probable grounds to suspect of having committed [a] felony." *State v. George,* 32 Wyo. 223, 245, 231 P. 683 (1924).

The constitutionality of the felony arrest rule enunciated above was settled in *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, reh. denied 424 U.S. 979, 96 S.Ct. 1488, 47 L.Ed.2d 750 (1976), wherein the Supreme Court held that the Fourth Amendment permits a duly authorized law enforcement officer to make a warrantless arrest for a felony, even though he has adequate opportunity to procure a warrant, if he has reasonable grounds to believe a felony has been committed and the person to be arrested committed it.

Since *State v. George,* the felony arrest rule has, in many cases, been extended to apply to misdemeanors. As one court stated:

"Under [federal constitutional standards], no distinction exists between felony and misdemeanor in respect to probable cause and good faith belief. Where an arrest is made by an officer for a misdemeanor committed out of his presence, probable cause therefor may be established by the possession of knowledge and facts justifying the belief on the part of one of reasonable prudence that the person arrested [committed] the crime charged." *Diamond v. Marland,* 395 F.Supp. 432, 440 (S.D.Ga.1975).

Applying this rationale, many states have abandoned the common-law rule that a warrant is required for a misdemeanor arrest unless the offense occurred in the arresting officer's presence. 1 LaFave & Israel, Crim.Proc. § 3.5 (1984). In its place, some of these states have statutorily authorized warrantless arrests for misdemeanors where there is reasonable cause to believe the person to be arrested committed a misdemeanor. Id.

In accordance with this trend, Wyoming enacted § 31–5–1204(a), which authorizes a police officer to arrest a person for any of the seven offenses described therein without first obtaining an arrest warrant where he has reasonable grounds to believe the offense has been committed and the person to be arrested committed it. Thus, Deputy Ashlock was authorized to arrest appellant if he had reasonable and probable grounds to believe that appellant was driving while under the influence of alcohol, whether or not the offense was committed in his presence and whether or not he had reasonable grounds for believing that, unless immediately arrested, appellant would not be apprehended, might cause injury to himself or others or damage to property, or might destroy or conceal evidence of the offense.

The question then becomes whether Deputy Ashlock had reasonable grounds to believe that appellant was driving or in actual physical control of a vehicle while under the influence of alcohol. In determining whether reasonable grounds exist for a warrantless arrest, a court must use

"a standard of reasonableness, viewed with practicality and applied with good sense. Furthermore, a court must consider the facts and circumstances known to the officer which would lead a reasonably cautious and prudent man to believe that the person to be arrested has committed a crime." *Vrooman v. State,* Wyo., 642 P.2d 782, 784 (1982) (citation omitted).

In the present case, the evidence presented at trial showed that Deputy Ashlock arrived at the scene after receiving a citizen's report of an accident involving damage to property. Deputy Ashlock saw a truck which was off the road in the ditch and smashed into the fence. Upon questioning Galloway, the deputy learned that the driver looked like appellant, that the driver had walked to appellant's house, and that the driver appeared to be intoxicated. A vehicle registration check revealed that the vehicle belonged to appellant's wife. Upon arriving at appellant's house to investigate further, Deputy Ashlock met appellant's wife on her way to talk to Mr. Galloway about the damage to his property. Later,

Deputy Ashlock asked appellant's wife for permission to enter and speak with appellant. Appellant's wife gave him permission to enter the house and led him to the room where appellant was sleeping. When Deputy Ashlock began questioning appellant, he observed that appellant's eyes were very bloodshot, that appellant smelled of alcohol, and that appellant had some difficulty speaking clearly and standing. Applying a standard of reasonableness, practicality, and good sense, as we are required to do, id., we hold that the facts and circumstances are such as to warrant a reasonably cautious and prudent man to believe that appellant was driving or in actual control of a vehicle while under the influence of alcohol.

Affirmed.