Matthew A. **MICKELSON**,
Appellant (Defendant),

v.

The **STATE** of **Wyoming**,
Appellee (Plaintiff).

No. 93–195.

Supreme Court of Wyoming.

Nov. 3, 1995.

Robert T. Moxley of Gage & Moxley, Cheyenne, for Appellant.

Joseph B. Meyer, Attorney General; Sylvia L. Hackl, Deputy Attorney General; and Barbara L. Boyer, Senior Assistant Attorney General, Cheyenne, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

Disappointed in the reversal of Matthew Mickelson's (Mickelson) conviction for misdemeanor interference with a peace officer, the State of Wyoming petitioned for rehearing following this court's opinion in *Mickelson v. State*, 886 P.2d 247 (Wyo.1994). Since the State alleged error regarding citizen resistance to arrest, we granted rehearing and entertained oral argument. Finding that the State has not sustained its burden of demonstrating error in our original determination, we dismiss their petition for rehearing.

## I. ISSUES

The State's brief in support of its petition for rehearing identified the following arguments:

### ARGUMENT I

The police had reasonable grounds to enter the bar.

### ARGUMENT II

Appellant interfered with a police officer in the performance of his lawful duties.

### ARGUMENT III

The officers had consent to enter the bar.

The State beseeches us for further guidance lest our original decision encourage "all miscreants to resist an officer's actions * * *," each in hopes of a post hoc determination that the officer's actions were unjustified. Hyperbole aside, the State's petition for rehearing bespeaks serious misapprehensions about the relationship of citizens and law enforcement as informed by cherished constitutional prohibitions on warrantless search and seizure.

Our original opinion is clear upon the failure of liquor laws to countenance warrantless law enforcement entry of a Wyoming bar after hours. However, if police entry was permissive, Mickelson's arrest might nonetheless have been proper. The permission issue, in turn, may hinge upon considerations of officer safety. Finally, the arresting officer entertained the assumption that reasonable suspicion of criminal activity permitted warrantless entry of an otherwise private premises.

## II. FACTS

Early January 7, 1993, Officer Michael Ernst found himself in a patrol car, supervising the graveyard shift of the Laramie Police Department. Around 2:37 a.m., Officer Ernst saw two men shooting pool inside the Fireside Bar and Lounge (the Fireside). He was concerned because a barmaid's car was parked outside and she was nowhere to be seen. Officer Ernst summoned another officer and together they observed the pool game for several minutes. Officer Ernst's suspicions were further piqued when the pool players apparently noticed their audience and extinguished the light over the pool table, retreating to darkened recesses of the bar.

When the officers approached the Fireside on foot, Mickelson appeared at a window and, in terms most obscene and profane, refused police entry. Officer Ernst asked "dispatch"[1] to contact the Fireside's owner to facilitate his permissive entry. Speaking to dispatch by telephone, the owner (Mickelson's mother) did not give permission for entry, but did inform dispatch that Officer Ernst probably just saw her son and some friends closing up. Mickelson's mother twice telephoned the bar, suggesting to her son that he might let the officers in, but leaving the decision to him. Other than Officer Ernst's description of an after-the-fact chat with Mrs. Mickelson, the record offers no support for the assertion that Mrs. Mickelson authorized police entry.

---

1. The base for communications between Laramie, Wyoming and Albany County law enforcement officers, formally known as the Laramie Albany County Records and Communications Center.

The fact that concerns for the barmaid's safety were allayed when she became visible within did not slacken assembly of a formidable contingent of peace officers without. A female officer, Reggie Prahl, sought to de-escalate the situation by convincing Mickelson that if she alone were allowed to enter and look around, things might quickly be resolved. Mickelson granted Officer Prahl permission to enter on the *express* condition that Officer Ernst *not* enter.

Since Officer Prahl's offer to enter the Fireside unaccompanied was contrary to her department's policy concerning officer safety, she and her fellow officers agreed in advance that Officer Prahl would not enter alone. Furthermore, Officer Ernst had already decided to immediately arrest Mickelson for interference with a peace officer. As Officer Prahl permissively entered the Fireside, Officer Ernst forced his way in behind her, along with several other officers. Mickelson made an effort to bar Officer Ernst's entrance and, in Officer Ernst's words: "As soon as I grabbed his arm, the fight was on." In the melee that followed, Mickelson could be heard calling out to Officer Prahl, asking why she had lied to him.

Mickelson was charged with felonious interference with a peace officer engaged in the lawful performance of his duties, in violation of Wyo.Stat. § 6–5–204(b) (1988). Having stipulated to a "lesser included offense" jury instruction covering misdemeanor interference with a peace officer engaged in the lawful performance of his duties, in violation of Wyo.Stat. § 6–5–204(a) (1988), Mickelson was convicted on that lesser offense.

### III. DISCUSSION

It is crucial to distinguish the kinds of encounters between citizens and police contemplated by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) from those in which officers and citizens are separated by the threshold of a residence or place of business. The existence of such a threshold affords increased protection for the privacy of citizens while ameliorating the concerns for officer safety which engendered *Terry* and its progeny.

### A. ARREST WITHOUT A WARRANT

■ Mickelson's arrest was a seizure of his person without a warrant. *Wilson v. State*, 874 P.2d 215, 223 (Wyo.1994). Seizures without a warrant are considered unreasonable, per se, subject only to a few clearly articulated exceptions. *Guerra v. State*, 897 P.2d 447, 452 (Wyo.1995). Absent a warrant, the state must establish the existence and applicability of such an exception. *Jessee v. State*, 640 P.2d 56, 61 (Wyo.1982).

### B. ABSENCE OF PERMISSION TO ENTER

■ It is true that Officer Ernst tried to contact the owner of the Fireside for permission to enter, but the record fails to establish that such permission was either forthcoming *or* effectively communicated to Officer Ernst. Officer Ernst's efforts to establish consent via post hoc colloquy with the owner ran afoul of the proposition that such action must be "justified at its inception * * *." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879 (quoted with approval in *Wilson*, 874 P.2d at 225).

■ A focal point of argument at rehearing was the nature of permission to enter the Fireside granted to Officer Prahl by Mickelson. The State contends fundamental officer safety concerns excuse the ruse whereby Officer Ernst and his cohorts piled into the Fireside after Officer Prahl. Mickelson argues consent to enter upon a private premises may lawfully be conditioned upon the number or identity of officers thus admitted. We agree with Mickelson.

> A consent to search may be restricted in scope to designated items, restricted to certain places, or limited in purpose. A time limitation or *limitation on persons permitted to conduct the search may be a further restriction on a consent search.* A search based on consent is proper so long as the search is kept within the bounds of the actual consent.

*Amin v. State*, 695 P.2d 1021, 1025 (Wyo. 1985) (emphasis added). Like consent to search, even a bare consent to enter must be voluntarily given in order to be legally valid. *Sandborn v. State*, 735 P.2d 435, 437 (Wyo. 1987) (*quoting Schneckloth v. Bustamonte*,

412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973)).

The leading federal case discounts an individual's legal capacity to validly limit the number of searchers, but agrees that "the government must conform to limitations placed upon the right granted to search * * *." *United States v. Rubio*, 727 F.2d 786, 796 (9th Cir.1983).

■ As stressed, Mickelson's arrest, like any other, was "quintessentially a seizure * * *," subject to Fourth Amendment scrutiny. *United States v. Watson*, 423 U.S. 411, 428, 96 S.Ct. 820, 830, 46 L.Ed.2d 598 (1976), Powell, J., concurring. Accordingly, a bright line has been drawn at the threshold of a person's dwelling which cannot be crossed to effectuate the warrantless arrest of a suspect absent consent or exigent circumstances. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980).

Two important distinctions separate *Payton* from the instant case. One is the *Payton* court's acknowledgment that "midday public arrest * * *" based on probable cause passes constitutional muster. *Id.* at 574–75, 100 S.Ct. at 1373–74 (*quoting Watson*, 423 U.S. at 418 n. 6, 96 S.Ct. at 825 n. 6). Because *Payton* specifies police entry of a dwelling, it may be argued that the relative sanctity of a man's place of business, when locked during non-business hours, remains unaddressed. In the present context, at least, the *Payton* rule should extend to businesses, particularly insofar as the Fourth Amendment was largely inspired by "writs of assistance" aimed at places of commerce. *Guerra*, 897 P.2d at 455; *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311–12, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978); *see also United States v. Bute*, 43 F.3d 531, 537 (10th Cir.1994).

■ *Payton* also provides that illegality of arrest does not preclude a trial on the merits. *Payton*, 445 U.S. at 592 n. 34, 100 S.Ct. at 1383 n. 34. We agree. *Crouse v. State*, 384 P.2d 321, 326–27 (Wyo.1963). The legality of Mickelson's arrest, however, is elemental to his alleged crime. Interference with a peace officer is not a crime unless the officer is "engaged in the lawful performance of his official duties." Wyo.Stat. § 6–5–204(a) and (b). Officer Ernst was not lawfully in the Fireside, ergo Mickelson's conviction cannot stand.

## C. OFFICER SAFETY

■ Nothing written here should be cited for the proposition that proper regard for officer safety might run police officers afoul of an arrestee's constitutional rights. The concerns for officer safety articulated by *Terry* have only increased exponentially over the years. *Terry*, 392 U.S. at 24 n. 21, 88 S.Ct. at 1881 n. 21. But *Terry* and its progeny involve contact between police and citizens in public places and upon public thoroughfares, where protection of officers may be effectuated through somewhat reduced citizen expectations of privacy. None of those cases addressed a situation where officers sought entry into a locked building when it was that very entry which would create greater danger for the officers.

Officer Prahl's efforts to de-escalate tensions were admirable, but such negotiations must be upon terms which the police can ultimately honor. Implied promises to Mickelson that Officer Prahl would enter alone and that Officer Ernst would not enter were disingenuous. A degree of ruse is oft allowed, " '[p]articularly, in the enforcement of vice, liquor or narcotics laws[.]' " *Lewis v. United States*, 385 U.S. 206, 210 n. 6, 87 S.Ct. 424, 427 n. 6, 17 L.Ed.2d 312 (1966) (*quoting* Model Penal Code § 2.10, comment, p. 16 (Tent.Draft No. 9, 1959)). However, the preferable course in a case like this is redemption of fundamental societal values:

> When a government agent presents himself to a private individual, and seeks that individual's cooperation based on his status as a government agent, the individual should be able to rely on the agent's representations. We think it clearly improper for a government agent to gain access * * * which would otherwise be unavailable to him by invoking the private individual's trust in his government, only to betray that trust.

*S.E.C. v. E.S.M. Government Securities, Inc.*, 645 F.2d 310, 316 (5th Cir.1981). The

need for undercover operations in today's society is patent, but different factors are at play when law enforcement presents itself to a citizen *qua* law enforcement. When a peace officer relies upon her badge in dealing with citizens, the officer comes under a continuing obligation to pursue those dealings in an honest and straightforward fashion. Failure to do so may jeopardize the fruits of her efforts.

### D. REASONABLE SUSPICION OF CRIMINAL ACTIVITY

██ Finally, it should be emphasized that even had Officer Ernst gained lawful entry to the Fireside, his pre-determined rationale for arresting Mickelson was fatally flawed. In Officer Ernst's own words: "[W]hat [Mickelson] was interfering with was our authorized investigation to go in there, to find out what was going on." Such conceit undermines meaningful enforcement of the Fourth Amendment. Pursuant to Officer Ernst's theory, a reasonably suspicious officer,[2] rebuffed by a citizen at the threshold, might demand entry. Angered by lawful refusal, the officer might then break down the door and perfunctorily arrest the inhabitant for that "interference." Such circular reasoning is unavailing as against Fourth Amendment protections.

It is true that Wyo.Stat. § 7–2–102(b) (1995) authorizes exceptions to the warrant requirement for arrest. *Lobatos v. State,* 875 P.2d 716, 723 (Wyo.1994). However, like the *Terry* type situations, *Lobatos* and its antecedents involve arrests made of citizens "on the boulevard." *See Ostrowski v. State,* 665 P.2d 471, 475 (Wyo.1983) and *Michigan v. DeFillippo,* 443 U.S. 31, 34, 99 S.Ct. 2627, 2630, 61 L.Ed.2d 343 (1979). When the threshold of a home or private place of business intervenes, probable cause is insufficient to warrant entry absent the presence of exigent circumstances or the audience of a neutral and detached magistrate. No matter how frustrated Officer Ernst and his fellow officers may have been, the dirty straw of these facts cannot be spun into the gold of probable cause and exigent circumstances

sufficient to propel law enforcement across the threshold of a closed retail liquor establishment.

### IV. CONCLUSION

The petition for rehearing is dismissed.

THOMAS, Justice, dissenting.

As was true in connection with the original opinion of the court in this case, I cannot agree with our opinion on the petition for rehearing. I dissent.

How soon we forget. The justice writing for the court in *Mickelson v. State,* 886 P.2d 247 (Wyo.1994), fails to account for the opinion of this court in *Roberts v. State,* 711 P.2d 1131 (Wyo.1985). The same oversight is found in the opinion of the court on the petition for rehearing. This case also seems to have escaped notice by the parties. Because the philosophical tone of that opinion is equally significant to the holding, I quote at length:

> Appellant argues that the trial court's instructions were contrary to the law and that they led the jury to ignore the impropriety of the bench warrant. He contends that the common law of resisting arrest still applies in Wyoming to permit a person to resist an arrest which is based upon an invalid warrant. We disagree. The crime of resisting arrest is defined by § 6–5–204(a), W.S.1977 (June 1983 Replacement). Before a person can be convicted under this statute, the prosecution must prove beyond a reasonable doubt that the resistance occurred while the peace officer was "engaged in the lawful performance of his official duties." One of a peace officer's official duties is found in § 7–2–102(a)(ii), W.S.1977, which authorizes an officer to "arrest a person when: * * * [h]e has reasonable grounds for believing that a warrant for the person's arrest has been issued in this state or in another jurisdiction." The execution of an invalid warrant is not excepted from a peace officer's official duty under § 7–2–102(a)(ii), supra, as

---

**2.** Pressed on cross-examination, Officer Ernst finally encapsulated his basis for warrantless entry of the Fireside: "I had reasonable suspicion to believe that there could possibly be minors in there."

it would be if the legislature had so intended. A peace officer, therefore, is lawfully performing his official duty when he makes an arrest even if it later appears that the arrest warrant is invalid. A person who resists such an arrest can be convicted under our resisting arrest statute. The jury instructions given by the trial court accurately reflected the law, and it was proper for the jury to ignore the alleged invalidity of the arrest warrant. Appellant's proffered instructions are clearly contrary to the law and were properly refused. *Simms v. State,* Wyo., 492 P.2d 516, 523 (1972).

Our holding in this case is supported by reason as well as by statute. It would be unfair to give the peace officers of this state the authority to make warranted arrests but deny them the protection of the resisting arrest statute. *State v. Wright,* 1 N.C.App. 479, 162 S.E.2d 56, 62 (1968). This unfairness would not be balanced by any legitimate gain by the persons arrested. Few, if any of them, have any idea at the time of their arrest that the warrant executed by the arresting officer might be invalid. Their later assertion of the privilege to resist is simply a post-hoc justification. We agree with what the Maryland Court of Special Appeals said in a case which is on all fours with this one:

> "In the case at bar, neither the appellant nor the police officers saw the warrant before the arrest. Clearly, the appellant did not resist the arrest because he believed the warrant was defective. To permit his conviction to turn upon whether in hindsight the warrant is adjudicated defective, a highly complex procedure in itself, when he could not have known it was defective is to permit an uninformed street decision by an accused to take the place of a decision by the appointed and informed adjudicative officers of the law. Such a procedure cannot be sanctioned at the cost of violent injury to police officers fulfilling the command of a warrant." *Rodgers v. State,* 32 Md.App. 90, 359 A.2d 122, 126 (1976).

**Even if the person arrested is absolutely certain that his arrest is a mistake, he should nevertheless cooperate with the arresting officer and employ remedies available through the judicial system.** While these remedies may be little consolation in some overburdened jurisdictions, we think they are viable in Wyoming. See P. Chevigney, The Right to Resist and Unlawful Arrest, 78 Yale Law Journal 1128, 1133–1136 (1969). Rule 5, W.R.Cr.P., requires that the arrested person be taken before a commissioner without unnecessary delay. The commissioner is required to inform him of "the general circumstances under which he may secure pretrial release." Rule 8(c), W.R.Cr.P. makes release upon bail mandatory for noncapital offenses unless the judicial officer determines that "such release will not reasonably insure the appearance of the person as required."

After the person arrested has been admitted to bail, the most onerous aspect of a mistaken arrest is behind him, and he can take up the issue of damages in a civil suit against the complainant. We note that the civil dockets in Wyoming courts are sufficiently current to give the damage remedy vitality.

An additional remedy is made available by the exclusionary rule. Any evidence acquired through the illegal arrest is inadmissible against the defendant at trial. *United States ex rel. Kilheffer v. Plowfield,* 409 F.Supp. 677, 680–681 (E.D.Pa.1976), citing *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

As a practical matter, the person arrested has little to gain by resisting arrest.

> "Vesting an arrestee with the right to resist quite clearly invites the police to respond with force and frequently the violence would entail the use of deadly weapons, a circumstance that ought never be encouraged." *United States ex rel. Kilheffer v. Plowfield,* supra, 409 F.Supp. at 681.

And, there can be no doubt that the police are usually the ones that come out on top in such confrontations. The fact that appellant suffered only temporary disability from Officer Wright's mace is more a trib-

ute to Officer Wright's self-control than it is a reason to permit such physical confrontations to continue undeterred.

Considering the solid arguments against the common law rule, it is not surprising that the trend is away from allowing resistance to illegal arrests. 1 W. LaFave, Search and Seizure § 1.11 at 211 (West 1978). The Model Penal Code provides that the "use of force is not justifiable * * * to resist an arrest which the actor knows is being made by a peace officer, although the arrest in unlawful." Model Penal Code § 3.04 (Tentative Draft No. 8 1958) quoted in 1 W. LaFave, supra, § 1.11 at 211–212. Similarly, the Uniform Arrest Act, first proposed by the Interstate Commission on Crime in 1941, requires a person who has reasonable grounds to believe that he is being arrested by a peace officer "to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest." S. Warner, The Uniform Arrest Act, 28 Va.L.Rev. 315, 345 (1941). Many state courts have recently moved away from the common law position although some have not yet adopted a blanket view that all illegal arrests cannot be resisted. See 1 W. LaFave, supra, § 1.11 at 212, n. 8 (1978); and 44 A.L.R.3d 1078, 1087, for a listing of the states that have departed from the common law rule.

This case represents a limited departure from the common law view because we only decide that a citizen cannot resist an arrest by a uniformed police officer who is executing a warrant. In cases where unlawful warrantless arrests or unlawful searches and seizures are resisted, § 7–2–102(a)(ii), W.S.1977, is not available to determine whether the searching or arresting officer is "engaged in the lawful performance of his official duties."

There may be situations in which police activity is so provocative and resistance so understandable that it can only be concluded that the police were not engaged in the lawful performance of their official duties. In such cases, the resisters cannot be prosecuted under our resisting arrest statute. But this is not one of those cases. Appellant was arrested by a uniformed police officer who tried several times to make a peaceful, low-key arrest. The officer informed appellant of the existence of the warrant and of the violation upon which the warrant was based. Appellant's resistance was fully punishable under the statute.

It is worth noting that there are no constitutional ramifications to our interpretation of the resisting arrest statute. While the United States Supreme Court held in *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), that evidence seized incident to an illegal arrest must be suppressed, the Court has never held that the arrestee has a constitutional right to resist such an arrest. 1 W. La-Fave, supra, § 1.11 at 212–213. The federal courts that have decided the issue have held that:

> "[A]t least absent unusual circumstances there exists no such federal constitutional right." *United States, ex rel. Kilheffer v. Plowfield,* supra, 409 F.Supp. at 680 (citing *United States ex rel. Horelick v. Criminal Court of City of New York,* 366 F.Supp. 1140 (S.D.N.Y.1973) rev'd on other grounds, 507 F.2d 37 (2nd Cir. 1974)).

The many state courts which have eliminated the right to resist an unlawful arrest have, of course, assumed that the common law rule has no constitutional dimensions.

*Roberts,* 711 P.2d at 1134–1136 (emphasis added, footnotes omitted).

In *Simmons v. State,* 712 P.2d 887, 889 (Wyo.1986), alluded to in *Roberts,* we said:

Appellant contended at trial, and contends now on appeal, that the warrantless arrest was illegal because it was unsupported by probable cause that a breach of peace had occurred; that since the arrest was illegal, Officers Dixon and Sparks could not have been engaged in the lawful performance of their official duties at the time of the assault; and, therefore, he cannot be guilty of the offense charged. It is an argument we cannot accept, because we disagree with its initial factual premise. After reviewing the evidence "in a light most favorable to the State," we believe

that the trial court correctly held that Officer Dixon made a lawful arrest based on probable cause that appellant was violating the Rawlins breach-of-peace ordinance. The assaults, therefore, occurred while Officers Dixon and Sparks were "engaged in the lawful performance of [their] official duties."

Section 7–2–103(a), W.S.1977, 1985 Cum. Supp., sets the requirements for a lawful warrantless arrest:

"(a) A peace officer may arrest a person without a warrant and detain him until a legal warrant can be obtained when:

"(i) Any criminal offense is being committed in his presence by the person to be arrested * * *."

In *Rodarte v. City of Riverton,* Wyo., 552 P.2d 1245, 1252 (1976), we interpreted this subsection of the statute to allow a warrantless arrest when the officer has "reasonable grounds to believe that an offense is being committed in his presence by the person to be arrested." We used the term "reasonable grounds" interchangeably with "probable cause." *Rodarte,* supra at 1253, citing *Williams v. United States,* 323 F.2d 90, 93 (10th Cir. 1963). Probable cause exists when at the moment the arrest is made the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused has committed or is committing an offense. *Rodarte,* supra, 552 P.2d at 1253, citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). (Footnotes omitted.)

In Mickelson's instance, the officers had probable cause to believe that he was engaged in the misdemeanor offense of knowingly obstructing, impeding or interfering with a police officer engaged in the lawful performance of his official duties. The officers believed that they were charged with examining the premises which Mickelson claims to have been defending to determine compliance with the state liquor laws. WYO. STAT. § 12–2–304 (1986) provides:

(a) The commission, through its employees or agents, may enter and inspect at any time every place of business wherein malt or alcoholic beverages are being sold, stored or kept by any licensee or permittee.

(b) The commission, through its employees or agents, may examine the records, books of account and stock of malt and alcoholic beverages of retailers, wholesalers and licensees.

(c) If any licensee refuses to permit the entry of an agent of the commission to his place of business or storage place for the purpose of inspection, his license may be revoked as provided by law. **Entry for purposes of inspection is authorized only during open business hours unless it is in the presence of the licensee or his duly authorized representative** or unless the officer making entry does so under court order or has reasonable grounds to believe that evidence of any violation of this title is within the place to be entered. (Emphasis added.)

The original opinion quoted subsection (c) of the statute, but ignored the language bolded above. I still hold the view that the court was mistaken in relying upon some requirement that the officers needed reasonable grounds to believe evidence of a violation of the law was within the place to be entered. The statute authorizes "[e]ntry for purposes **of inspection * * * only during open business hours unless it is in the presence of the licensee or his duly authorized representative."** This aspect of the statute was satisfied, and we still have not established that police officers are not agents of the liquor commission for this purpose. If that is, by implication, an aspect of our original ruling, it was not known by these officers until after the case was decided.

It follows ineluctably for me that the officers, at the very least, believed they were engaged in the lawful performance of their duties when Mickelson prevented their entry into the Fireside Bar and Lounge. That occurred in their presence, and they were authorized by statute to arrest Mickelson for that offense. Mickelson can and should be lawfully convicted of resisting arrest for en-

gaging in a brawl with the officers when they advised him they were arresting him. His conviction should be affirmed.