Affirmed as modified. Mandate shall issue forthwith.

**UNITED STATES of America, Appellee,**

v.

**Billy J. THOMLINSON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Doreen K. KUNKEL, Appellant.**

**Nos. 89-1543, 89-1597.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1989.

Decided March 7, 1990.

Bruce W. Simon, Kansas City, Mo., for appellants.

Matt J. Whitworth, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

Billy J. Thomlinson and Doreen K. Kunkel were convicted of an assortment of drug-

related charges. They appeal from the district court's refusal to suppress cocaine, weapons, and drug paraphernalia seized when police officers entered their tavern to investigate an after-hours violation of the Kansas City, Missouri, liquor ordinance. We affirm.

When the incident leading to Thomlinson's and Kunkel's convictions occurred, Thomlinson was in the process of purchasing a tavern licensed to sell alcoholic beverages in Kansas City. The seller turned over possession of the tavern to Thomlinson and Kunkel, and he notified the local liquor control officials of the pending change in ownership. The seller also arranged with these officials to have his own license extended during the transitional period. The seller's license remained in force, and under the terms of the license and the Kansas City ordinance, the tavern was required to close for business at 3:00 a.m. *See* Kansas City, Mo., Ordinances § 4.16.3 (1982).

We are told it is not unusual for police officers to check licensed taverns after 3:00 a.m. to ensure compliance with the ordinance's closing requirement. The ordinance provides that "[police officers] shall have the right, at any reasonable time, to inspect and the licensee shall allow inspection of ... all portions [of the licensed premises], including all rooms ... used in connection with the operations carried on under [the] license." *Id.* § 4.5(a) (1968). The ordinance does not provide for forcible entry in the absence of a search warrant if a licensee refuses admission to the inspectors.

Initially, Thomlinson and Kunkel argue the government's reliance on section 4.5(a) of the ordinance as authority for the police officers' warrantless inspection of the tavern is misplaced. They contend the tavern was unlicensed and not subject to regulatory inspections because the seller's license was not transferable to them, and the liquor authorities had not issued a new license to Thomlinson and Kunkel. We reject this argument. The testimony given by the local liquor control officials clearly supports the district court's conclusion that "[the tavern] was [ ] licensed [ ] under the letter and practice of state and local liquor regulations."

■ Thomlinson and Kunkel next argue the police officers illegally searched the tavern because the ordinance does not authorize forcible entries without a warrant. *See Colonnade Catering Corp. v. United States,* 397 U.S. 72, 77, 90 S.Ct. 774, 777, 25 L.Ed.2d 60 (1970). Thomlinson and Kunkel contend the officers used force in gaining entry to the tavern and a locked office inside. The district court's findings, however, do not support their contention.

After the tavern was required to close for business at 3:00 a.m., a police officer on the scene looked in the front window and saw six people sitting at the bar. At least one of them was drinking an alcoholic beverage. A woman leaving the back door of the tavern told the officer she had been inside drinking with some friends. The officer, joined by two other officers, knocked at the tavern's back door and asked for admittance to investigate a liquor violation. When Kunkel opened the door, she stepped aside and allowed the officers to enter the tavern. Kunkel told them she and a companion who joined her at the door were the only people present. The officers then heard noises coming from an office area, but were unable to look inside because the door was locked. One of the officers requested the keys to the office door and Kunkel complied. When the officers opened the door, they found Thomlinson and another man hiding in the darkness. The officers saw three guns and numerous bags containing cocaine on the top of a desk and in open file drawers. The officers also found more weapons and drug paraphernalia in the office. After obtaining a search warrant, additional cocaine was discovered in the tavern.

We conclude the police officers' search was not accomplished by any unauthorized force. The officers had ample grounds to believe Thomlinson and Kunkel were violating the ordinance's closing requirement. When the officers requested admittance to the tavern, they were merely asserting their right under the ordinance. *See* Ordi-

nances § 4.5(a). Kunkel had the opportunity to refuse the officers' request for admittance; however, she decided to open the door and "submi[t] to [their] lawful authority [by her] decision to step aside and permit the inspection." *United States v. Biswell*, 406 U.S. 311, 315, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972). Once inside the tavern, the ordinance permitted the officers to inspect the office, particularly when they heard noises after Kunkel lied to them that there were only two people present. Kunkel could have refused the officers' demand for admittance to the office but she chose to produce the key. Based on the facts found by the district court, we cannot say the officers made impermissible "forcible entries without a warrant." *Colonnade*, 397 U.S. at 77, 90 S.Ct. at 777. Thus, the police officers' warrantless inspection of the tavern "must be deemed reasonable official conduct under the [f]ourth [a]mendment," *Biswell*, 406 U.S. at 316, 92 S.Ct. at 1596, and the district court properly denied suppression of the seized items as evidence.

■ Finally, Thomlinson argues the district court committed error in admitting evidence that he was a member of a motorcycle club. Thomlinson contends photographs of his tattooed torso and testimony about his motorcycle club membership were used improperly for the purpose of inflaming the jury. *See* Fed.R.Evid. 403. We disagree. The police discovered a briefcase in the office containing notes of drug transactions, business cards for tattoo parlors, and a motorcycle club brochure. The government introduced the evidence of Thomlinson's motorcycle club membership and photographs of his tattoos to prove Thomlinson owned the briefcase. We invariably defer to the district court's decision in balancing the prejudicial effect and probative value of evidence, *United States v. White*, 890 F.2d 1012, 1014 (8th Cir. 1989), and in this instance, we do not believe the district court's decision to admit the challenged evidence was an abuse of discretion.

After carefully considering Thomlinson's and Kunkel's arguments and finding them to be without merit, we affirm their convictions.