Matthew A. MICKELSON,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93-195.

Supreme Court of Wyoming.

Nov. 22, 1994.

Rehearing Granted Dec. 21, 1994.

Robert T. Moxley of Gage & Moxley, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Mark T. Moran, Asst. Atty. Gen., for appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY and TAYLOR, JJ.

CARDINE, Justice, Retired.

Matthew A. Mickelson (Mickelson) appeals his conviction for misdemeanor interference with a peace officer. Mickelson was charged and convicted of the offense for refusing to allow police entry into a bar after hours for the purpose of checking for violations of the liquor laws. Because there were not reasonable grounds to demand entry pursuant to the liquor laws,

* Retired July 6, 1994.

We reverse.

Mickelson raises six issues:

I. Did the trial court commit error of law in its interpretation of the law of arrest?

II. Did the trial court commit error of law in its interpretation of the law of search and seizure?

III. Did the trial court commit error of law in its interpretation of the statutory right of police officers to make warrantless regulatory inspections of locked business premises?

IV. Did the county court commit error of law in binding over the case in the absence of evidence sufficient to sustain a probable cause finding on an essential element?

V. Did the trial court commit error of law in allowing the prosecution to pursue theories possibly inconsistent with the verified information, and in variance to the preliminary hearing showing?

VI. [Was] the partially probationary sentence characterized by abuse of discretion in the pronouncement of terms of probation?

The State condenses the issues to three:

I. Probable cause existed to arrest appellant and sufficient evidence existed to support his conviction for misdemeanor interference with a peace officer.

II. Charges of interference with a peace officer remained the same before and after the preliminary hearing.

III. Appellant was properly sentenced by the district court.

## FACTS

Early on the morning of January 7, 1993, Officer Michael Ernst of the Laramie Police Department was on routine patrol in downtown Laramie. At 2:37 a.m. Officer Ernst was driving past the Fireside Bar and Lounge (the bar) when he noticed two men playing pool inside. Officer Ernst became suspicious because liquor establishments are supposed to stop serving at 2 a.m. and customers have to vacate the dispensing room by 2:30 a.m. Officer Ernst was also concerned because he could not see the bartender inside the bar, although her car was parked outside.

Officer Ernst parked across the street where he could observe the two pool players. The pool table room is not the dispensing room. Officer Foreman arrived shortly thereafter and joined Officer Ernst in the surveillance. After watching for six or seven minutes, the lights went out in the bar. Officer Foreman, who had been using binoculars, reported that the pool players had apparently noticed the police just before the lights went out.

The officers decided to wait and see if anyone would exit the bar. When no one exited, the officers decided to check the situation out. As they approached the bar, Officer Foreman noticed a figure trying to hide in the bar. At that point Officer Ernst called for backup.

While searching the interior of the bar through a window with their flashlights, Mickelson appeared inside and approached a window. Officer Ernst informed Mickelson that the police wanted to enter the bar to make sure everything was all right. Mickelson refused to unlock the door, and he began pacing around inside while cursing the officers, telling them to get a warrant.

As other officers began to arrive at the scene, Officer Ernst noticed an individual, later identified as Daniel Peck, standing inside, smiling and holding a pool cue. Also, at about this time, the female bartender came into view; and she began yelling at Mickelson to open the door. Mickelson all the while was continuing with his profane tirade.

Officer Ernst concluded that they would not be able to get Mickelson to open the door, so he had police dispatch contact the owner of the bar, Mickelson's mother (Mrs. Mickelson). Mrs. Mickelson spoke with the bartender and her son on the phone.

Shortly thereafter Mickelson apparently decided that it would be all right for one of the officers to enter the bar. Mickelson unlocked the door with the intention of letting only Officer Reggie Prahl inside. How-

ever, Officer Ernst testified that he did not want her entering the bar alone in that volatile situation, so he and Officer James Rigdon followed her inside.

As soon as Officer Ernst entered the bar, Mickelson swore at him and tried to push him out of the bar. Mickelson did not want Officer Ernst inside and never gave permission to Ernst to enter. Apparently there had been several prior disagreeable incidents between Officer Ernst and members of the Mickelson family. Mickelson testified that he was fearful of Officer Ernst. At that point, Officer Ernst attempted to arrest Mickelson for interference for his refusal to let the officers into the bar. A melee ensued, and it took three officers and an electric "stun gun" to finally subdue Mickelson. At the same time it took two officers wielding batons to subdue Peck, who attempted to come to Mickelson's aid.

Mickelson was charged with felony interference with a peace officer. A jury returned a verdict of guilty on the lesser included offense of misdemeanor interference with a peace officer. The trial judge sentenced Mickelson to 90 days in jail, a $1,000 fine, and nine months probation, one term of which was that Mickelson could not work in an establishment whose main source of income was the sale of alcohol. Mickelson appeals his conviction and that part of his sentence which limits his employment.

### DISCUSSION

Mickelson was convicted of misdemeanor interference with a peace officer pursuant to W.S. 6–5–204(a) (1988), which provides:

(a) A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer *while engaged in the lawful performance of his official duties.*

(Emphasis added.) Mickelson contends that the police were not "engaged in the lawful performance" of their duties because their entry into the bar was unlawful. Mickelson argues that neither the search and seizure

standard of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) or Title 12 of the Wyoming Statutes (the liquor laws) provide a sufficient legal basis for an after-hours inspection of a liquor establishment.

The State counters with W.S. 12–2–304(c) (1986), which provides:

(c) If any licensee refuses to permit the entry of an agent of the [liquor] commission to his place of business or storage place for the purpose of inspection, his license may be revoked as provided by law. *Entry for purposes of inspection is authorized only during open business hours unless* it is in the presence of the licensee or his duly authorized representative or unless *the officer making entry* does so under court order or *has **reasonable grounds** to believe that evidence of any **violation of this title** is within the place to be entered.*

(Emphasis added.) The State argues that, given the circumstances, the police had reasonable grounds to believe that a liquor violation may have been occurring in the bar.

We begin our analysis with the grounds cited by the police to support their decision to enter the bar. The police entry into the bar was based on suspicions which were raised by the circumstances: (1) they feared the bartender may have been the victim of domestic violence; (2) there may have been a robbery in progress; (3) minors may have been present; and (4) non-employees may still have been in the bar. The question we must answer is whether these suspicions gave the officers "reasonable grounds" to enter the bar after hours.

■ The place we begin is with the language of the statute, W.S. 12–2–304(c). The statute's language plainly authorizes entry after hours only when an officer has reasonable grounds to believe that evidence of a violation of "this title" is occurring inside the place to be entered. The phrase, "this title," refers to Title 12 of the liquor laws since that is the title in which the statute appears. Thus, for purposes of entering a liquor establishment after hours under W.S. 12–2–304(c), only violations of Title 12 can be the basis of an officer's reasonable grounds.

■ Going back to the police officer's stated grounds for entering the bar in this case, we find that only two of the grounds are relevant to our inquiry under W.S. 12–2–304(c): Title 12 prohibits minors from entering bars, W.S. 12–5–203 (1986), and it also forbids non-employees from remaining in the dispensing room after hours, W.S. 12–5–101(a) (1986). Whether a robbery or domestic violence was occurring is irrelevant to an inquiry under W.S. 12–2–304(c) because they are not violations of Title 12.

■ Next, we must determine when it was that the police officers decided to enter the bar. The statute, W.S. 12–2–304(c), requires reasonable grounds as the basis for the entry—thus, logically, the officers must have reasonable grounds before they decide to enter. *See Wilson v. State*, 874 P.2d 215, 225 (Wyo.1994) (officer must have reasonable suspicion of illegal activity before he can detain a person for questioning). Post hoc rationalizations cannot justify a decision to enter without reasonable grounds. *See State v. Welch*, 873 P.2d 601, 606 (Wyo.1994) (Cardine, J., dissenting) (suspicions developed after decision to call canine unit are irrelevant to reasonable suspicion inquiry).

Officers Ernst and Foreman had decided to leave their observation position and approach the bar to "check it out" and to "contact" the people inside. The first person contacted by the police was Mickelson, at which time the police immediately demanded entry into the bar. Between the time the police approached the bar at 2:48 a.m. and the contact with Mickelson, sometime prior to 2:52 a.m., the record discloses no additional facts which would create reasonable grounds to demand entry. Thus, at the time the police made "contact," they demanded entry. It was at that time that they decided to enter the bar, and it was at that time that reasonable grounds to believe a violation was occurring was necessary. That time span is very small.

■ The critical question then is: Whether the police had reasonable grounds to believe there was a violation of the liquor code at the time they decided to enter the bar. We conclude that reasonable grounds were not present. There simply was no evidence at the time the officers approached the bar and demanded entry that there was a violation of Title 12. There is nothing in the record to suggest that minors or non-employees were present inside. *But see United States v. Thomlinson*, 897 F.2d 971 (8th Cir. 1990) (warrantless search reasonable where patron leaving tavern informed officers after-hours drinking was going on and where officers requested admittance and door was voluntarily opened). In fact, the police themselves did not believe at that time that a violation of Title 12 was occurring in the bar. Officer Ernst testified:

[Prosecutor] Did you have reasonable grounds, even as you approached the liquor establishment, to believe that there was a violation of the liquor code going on at that time?

[Officer Ernst] Probably not at that time, no. Again, I only saw people playing pool, and they shut the lights off and didn't come out, so at that point I just had what I would say is peculiar behavior due to the fact that no one was coming out after they shut out all the lights.

Shutting off the lights and not immediately leaving the bar is not a violation of the liquor code. Officer Ernst's testimony shows that he had failed to formulate reasonable grounds prior to the decision to enter the bar. *See Wilson*, 874 P.2d at 225. Therefore, the police officers did not have the right to demand entry into the bar pursuant to W.S. 12–2–304(c).

Since we have found that the police could not lawfully enter the bar pursuant to W.S. 12–2–304(c), they were not "engaged in the lawful performance" of their official duties, and Mickelson could not have interfered with them.

The State also suggests that the officers had independent grounds to justify their entry into the bar. The State argues that there was probable cause that a crime was being committed, robbery or domestic violence, which gave rise to exigent circumstances justifying a warrantless entry.

■ The record fails to show that the State presented this argument in the court

below. Furthermore, the police officers, in their testimony, never attempted to justify their entry in those terms, nor did they claim entry pursuant to permission. To the contrary, the police maintained throughout that their entry was pursuant to the liquor laws. Also, whatever the standards are for reasonable grounds, it is most assuredly easier to meet than the standards for probable cause. Since the officers did not have reasonable grounds to enter, they did not likely have probable cause to enter; but we need not decide that question, it not being raised in the trial court but only for the first time on appeal. Were our decision otherwise, there might also be a problem with the term of probation that prohibited Mickelson from working at his occupation as a bartender. But because of our reversal, we likewise need not answer that question.

### *CONCLUSION*

The police did not have reasonable grounds to demand entry to the bar pursuant to W.S. 12–2–304(c). Since the police did not have authority to demand entrance, Mickelson's refusal to admit them did not result in an interference with the performance of the officer's official duties. Therefore, an essential element of the crime is missing, and Mickelson's conviction must be, and it is

Reversed.

THOMAS, J., filed a dissenting opinion in which TAYLOR, J., joined.

THOMAS, Justice, dissenting, with whom TAYLOR, Justice, joins.

This court has decided a far different case from the one presented to the district court. I cannot agree there is a different case to be decided and, since I believe the trial court correctly dealt with the case, I am compelled to dissent.

The departure emerges promptly in the majority opinion, which asserts Mickelson was charged and convicted of the offense of misdemeanor interference with a peace officer for refusing to allow police entry to a bar after hours. The opinion goes on to endeavor to explain that, since the police officers did not have reasonable grounds to believe a

violation of the liquor code might be occurring, they had no authority to arrest Mickelson for refusing them entry to a bar. This is a very interesting theory.

The district court perceived the information in the record as I perceive it. It probably is debatable as to whether the officers had reasonable grounds to demand entry. Nevertheless, the record seems clear the owner of the bar, Mickelson's mother, directed Mickelson to permit the officers to enter. The majority even emphasizes language from WYO.STAT. § 12–2–304(c) (1986) to the effect that entry for purposes of inspection is authorized only during open business hours unless it is in the presence of the licensee or his duly authorized representative. This entry was effected in the presence of the duly authorized representative of the licensee. Apparently, Mickelson decided to attach his own conditions to those articulated by the licensee and insisted that only a female officer could enter the premises.

The other officers, recognizing this would be a gross breach of police procedures, entered with the female officer. Mickelson promptly made contact with Officer Ernst in an effort to push him out the door. At that time, Ernst told Mickelson he was under arrest for interference. Rather than relying upon some rather subjective information invoked by the majority, I prefer to look to the objective fact that Mickelson was only arrested after he had made physical contact with Officer Ernst.

My perception of the case then, very much like the trial court's, is that whatever the issues might have been with respect to the entry by the officers, they were present after the licensee had directed Mickelson to admit them. Mickelson's right to assault a police officer should not hinge upon a later conclusion that, based upon technicalities, the officer had no right to be on the premises. Mickelson chose to take the law into his own hands and should not be heard to complain about the consequences of that activity.

I would hold the officers came within the scope of the liquor code in this instance because they sought, and apparently had, the permission of the licensee to enter the prem-

ises to make an inspection. Mickelson's unwarranted assault upon Officer Ernst led to his conviction of interference with a police officer, and that conviction should be affirmed. The majority does hint there may be an unlawful condition in the probation requirements relative to employment. If the conviction were to be affirmed, as I think it should be, that matter would have to be addressed, but since the majority has reversed the conviction, there is nothing to be gained by further debate on that question.

I would affirm the conviction of Mickelson for interference with a peace officer.