_____

No. 95-3813SI
_____

United States of America,        *
                                 *
            Appellee,            *
                                 *
    v.                           *
                                 *
James Austin Dunnaway,           *
                                 *
            Appellant.           *

_____

No. 95-3814SI
_____

United States of America,        *
                                 *
            Appellee,            *
                                 *   Appeals from the United States
    v.                           *   District Court for the Southern
                                 *   District of Iowa.
Jeffrey Colin Van Cleave,        *
                                 *
            Appellant.           *

_____

No. 96-1060SI
_____

United States of America,        *
                                 *
            Appellee,            *
                                 *
    v.                           *
                                 *
Matthew David Cannon,            *
                                 *
            Appellant.           *
                              _____

            Submitted:  May 14, 1996

            Filed:  July 8, 1996
                              _____

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.
                              _____

FAGG, Circuit Judge.

James Austin Dunnaway, Jeffrey Colin Van Cleave, Matthew David Cannon, and two other white men left a party to assault any black man they could find. They found a black man in a public park talking with his wife, who is white. The white men attacked the black man, kicking him repeatedly in the head and body. During the attack, one of the assailants identified himself as a "skinhead" and used a racial slur. The victim suffered multiple injuries, including a boot imprint on his forehead that remained for several days. The attackers returned to the party and reported they had beaten a black man because he had been sitting in a park with a white woman. Dunnaway and Van Cleave later pleaded guilty to interference with a person's enjoyment of a public facility because of the person's race. See 18 U.S.C. § 245(b)(2)(B) (1994). A jury found Cannon guilty of the same charge and guilty of conspiracy to commit a federal offense. See id. § 371. Cannon appeals his conviction, challenging the admission of evidence that he is a skinhead and holds racist views. Dunnaway, Van Cleave, and Cannon all appeal their sentences, asserting the enhancement of their base offense level under U.S.S.G. § 2A2.2(b)(2)(B) (1994) is impermissible double-counting. We affirm.

Cannon contends the district court committed plain error by admitting evidence that he is a skinhead because the evidence was irrelevant. During Cannon's trial, witnesses testified Cannon has a tattoo inside his lip that says "skins" and another tattoo on his leg that says "LSD," which stands for "Local Skins Division." Witnesses also testified Cannon had a shaved head at the time of the assault.

Because Cannon made a tactical decision not to object to admission of the skinhead testimony during trial, he waived review of its admission, even for plain error. United States v. Mihm, 13

-2-

F.3d 1200, 1204 (8th Cir. 1994); United States v. Yu-Leung, 51 F.3d 1116, 1122-23 (2d Cir. 1995). Before trial, the district court put Cannon on notice of the anticipated skinhead testimony and told Cannon to make any objections to the testimony during trial. Rather than objecting at trial, however, Cannon used the evidence to argue the Government was persecuting him for his membership in an unpopular group. In any event, admission of the skinhead testimony was proper. The crime in this case involved elements of racial hatred, so admission of the evidence did more than show Cannon's bad character. See Dawson v. Delaware, 503 U.S. 159, 166-67 (1992). The testimony was also relevant to show the identity of the attackers. See United States v. Thomlinson, 897 F.2d 971, 973 (8th Cir. 1990). Indeed, one of the assailants identified himself as a skinhead and the victim described his assailants as having shaved heads.

Cannon also contends the district court committed plain error in admitting testimony about his views on racial issues. Witnesses testified Cannon did not like black people, commonly used racial epithets when referring to blacks, and believed interracial relationships were wrong. Because Cannon was charged with a racially motivated crime, evidence of his racist views, behavior, and speech were relevant and admissible to show discriminatory purpose and intent, an element of the charges against him. Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993); United States v. Stewart, 65 F.3d 918, 930 (11th Cir. 1995), cert. denied, 116 S. Ct. 958 (1996); O'Neal v. Delo, 44 F.3d 655, 661 (8th Cir.) cert. denied, 116 S. Ct. 129 (1995); United States v. Franklin, 704 F.2d 1183, 1187-88 (10th Cir.), cert. denied, 464 U.S. 845 (1983). Thus, admission of this evidence was not erroneous, much less plainly erroneous.

We now turn to the sentencing issue. The district court sentenced Dunnaway, Van Cleave, and Cannon under the aggravated assault guideline, U.S.S.G. § 2A2.2 (1994). Section 2A2.2 sets a

base offense level of fifteen for "aggravated assault," meaning "a felonious assault that involved . . . a dangerous weapon with intent to do bodily harm . . . ." <u>Id.</u> n.1(a). Section 2A2.2(b) requires increases in the base offense level when specific offense characteristics exist. When a gun is not discharged but "a dangerous weapon . . . was otherwise used," the district court must increase the base offense level by four levels. <u>Id.</u> § 2A2.2(b)(2)(B). "Otherwise us[ing]" a dangerous weapon means "more than brandishing, displaying, or possessing" it. <u>Id.</u> § 1B1.1 n.1(g). Because Dunnaway, Van Cleave, and Cannon used a bottle and their boots as dangerous weapons during the assault, the district court added four levels to their base offense level under § 2A2.2(b)(2)(B).

Dunnaway, Van Cleave, and Cannon do not argue they should not be sentenced under the aggravated assault guideline, or that the bottle and boots are not dangerous weapons within the guideline's meaning, <u>see</u> <u>id.</u> § 1B1.1 n.1(d) (defining "dangerous weapon"). Instead, Dunnaway, Van Cleave, and Cannon assert the four-level enhancement double-counts their use of the bottle and boots as dangerous weapons because their use of the weapons was already considered in deciding their crime was an aggravated assault. They assert objects that are not inherently dangerous, such as boots, must be used before the objects become dangerous weapons involved in an assault, triggering application of the aggravated assault guideline. <u>See</u> <u>United States v. Hernandez-Fundora</u>, 58 F.3d 802, 812-13 (2d Cir.), <u>cert. denied</u>, 115 S. Ct. 2288 (1995); <u>United States v. Hudson</u>, 972 F.2d 504, 506-07 (2d Cir. 1992).

Along with most circuits that have considered the issue in the same context, we conclude the enhancement under U.S.S.G. § 2A2.2(b)(2)(B) is not impermissible double-counting. <u>United States v. Sorensen</u>, 58 F.3d 1154, 1161 (7th Cir. 1995) (concrete block used as weapon); <u>United States v. Garcia</u>, 34 F.3d 6, 11-12 (1st Cir. 1994) (car used as weapon); <u>United States v. Reese</u>, 2

-4-

F.3d 870, 896 n.32 (9th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 928 (1994); <u>United States v. Williams</u>, 954 F.2d 204, 206-07 (4th Cir. 1992) (metal chair used as weapon). An assault qualifies as an aggravated assault under § 2A2.2 if the assailant possesses a dangerous weapon and intends to do bodily harm. <u>See</u> <u>Sorensen</u>, 58 F.3d at 1161. Intent to do bodily harm with an object that is not inherently dangerous might be shown by conduct that falls short of actual use of the object. Only when the assailant then uses the object as a weapon, that is, does more than brandish, display, or possess the object, does the assailant qualify for the enhancement under § 2A2.2(b)(2)(B). <u>See</u> <u>id.</u> Thus, "`the dangerous weapon adjustment rationally reflects the Guideline's graduated adjustment scheme.'" <u>Id.</u> (quoting <u>Williams</u>, 954 F.2d at 206).

Because the enhancement under § 2A2.2(b)(2)(B) is not double-counting, the district court properly enhanced the sentences in this case. Accordingly, we affirm Cannon's conviction and sentence. We also affirm the sentences of Dunnaway and Van Cleave.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.