# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 32

APRIL TERM, A.D. 2023

April 17, 2023

MYRON MARTIZE WOODS,

Petitioner,

v.

S-22-0125

THE STATE OF WYOMING,

Respondent.

*Original Proceeding*
*Petition for Writ of Review*
*District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*
    Lauren McLane, Faculty Director, Defender Aid Clinic, University of Wyoming College of Law; Luke Dainty, Student Director. Argument by Mr. Dainty.

*Representing Appellee:*
    Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]     Myron Martize Woods challenges his conviction for misdemeanor interference with a peace officer.  Mr. Woods' conviction stems from resisting when police officers entered his home without a warrant to effectuate his arrest for a misdemeanor crime.  We reverse Mr. Woods' conviction because the officers were not engaged in the lawful performance of their official duties.

## *ISSUE*

[¶2]     We state the dispositive issue as:

> Whether the officers arrested Mr. Woods while engaged in the lawful performance of their official duties as required to convict him under Wyo. Stat. Ann. § 6-5-204(a) (LexisNexis 2021).

## *FACTS*

[¶3]     The key facts are undisputed.  On February 13, 2020, at approximately 8:00 p.m., the Cheyenne Police Department received an emergency call about a verbal disturbance on 24th Street.  Officer Warren and another officer responded.  They arrived at the residence of Brittany Jackson and found Mr. Woods, his wife, Evelyn Rodriguez, and his ex-girlfriend, Ms. Jackson, at the scene.  The officers separately interviewed each person and learned: Mr. Woods and Ms. Jackson shared a son, the two had been arguing since earlier in the evening when Ms. Jackson observed Mr. Woods at Walmart without their son, whom he was supposed to be watching, and the argument moved to Ms. Jackson's house after Mr. Woods brought their son over in his car.  Ms. Jackson told Officer Warren that Mr. Woods had grabbed her neck and pushed her when she was trying to get their son out of the car.  Officer Warren did not initially observe any marks on Ms. Jackson.  After the interviews, Officer Warren determined there was not enough probable cause to arrest Mr. Woods.

[¶4]     At approximately 10:00 p.m., Officer Warren and his supervisor, Sergeant Young, returned to Ms. Jackson's residence after she called asking for further investigation of the case.  After further investigation and observing marks on her neck, Officer Warren believed he had probable cause to arrest Mr. Woods for the crime of misdemeanor domestic battery under Wyo. Stat. Ann. § 6-2-511(a) (LexisNexis 2021).  Officer Warren did not try to obtain an arrest warrant, believing it was not required within twenty-four hours of the alleged offense.[1]

---

[1] Wyo. Stat. Ann. § 7-20-102(a) states, in part:

[¶5]    At approximately 11:30 p.m., Officer Warren, Sergeant Young, and another officer arrived at Mr. Woods' home. Officer Warren's body camera captured the encounter. The officers initially approached Mr. Woods' front door and knocked. Ms. Rodriguez, who was visibly pregnant, opened the door and remained at the threshold of the home. Mr. Woods also came to the door and stood behind Ms. Rodriguez.

[¶6]    The officers asked Mr. Woods to step out of his home because they wanted to talk about "what happened on 24th Street[.]" Mr. Woods declined and stated, "we can talk from in here, what's going on?" The officers then questioned Mr. Woods about what occurred on 24th Street. Mr. Woods repeatedly stated nothing happened.

[¶7]    After asking more questions, the officers again asked Mr. Woods to step outside. When Mr. Woods refused, Officer Warren reached across the threshold of the home to grab Mr. Woods' wrist and pull him out. Mr. Woods pulled his hand away from Officer Warren and the officers entered the house, pushing through Ms. Rodriguez, to arrest Mr. Woods. The officers did not inform Mr. Woods he was under arrest until they had fully entered the house and repeatedly told him to put his hands behind his back. The officers struggled with Mr. Woods for over two minutes before handcuffing him and taking him out of the house.

[¶8]    The State filed an information charging Mr. Woods with one count of misdemeanor domestic battery and one count of misdemeanor interference with a peace officer. Mr. Woods filed a motion to suppress. The circuit court held a suppression hearing in June 2020. During the hearing, Mr. Woods challenged the officers' warrantless arrest in his home and sought to exclude all evidence related to the arrest. The court denied the motion.

[¶9]    The circuit court held a jury trial in April 2021. Mr. Woods was acquitted of domestic battery but found guilty of misdemeanor interference with a peace officer under Wyo. Stat. Ann. § 6-5-204(a). The court sentenced Mr. Woods to a term of incarceration for 365 days, credit for 10 days served, with 346 days suspended for one year of probation. Mr. Woods appealed to the district court, and it affirmed his conviction in May 2022.

[¶10]  We granted Mr. Woods' petition for writ of review.

---

[A]ny peace officer who has probable cause to believe that a violation of W.S. 6-2-510(a) or 6-2-511(a) has taken place within the preceding twenty-four (24) hours . . . may arrest the violator without a warrant for that violation, regardless of whether the violation was committed in the presence of the peace officer.

## DISCUSSION

[¶11]   Wyo. Stat. Ann. § 6-5-204(a) states:

> (a) A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while **engaged in the lawful performance** of his official duties.

(emphasis added).

[¶12]   This Court has stated "[t]he legality of [a defendant's] arrest . . . is elemental" to the crime of interference with a peace officer because such interference "is not a crime unless the officer is 'engaged in the lawful performance of his official duties.'"  *Mickelson v. State*, 906 P.2d 1020, 1022–23 (Wyo. 1995) (*Mickelson II*) (quoting Wyo. Stat. Ann. § 6-5-204(a) and (b)); *see also Mickelson v. State*, 886 P.2d 247, 250–51 (Wyo. 1994) (*Mickelson I*).

[¶13]   Whether an officer's performance of his official duties is "lawful" is a question of law we review de novo.  *See Mickelson II*, 906 P.2d at 1022–24; *Mickelson I*, 886 P.2d at 249–51; *see also Hawken v. State*, 2022 WY 77, ¶ 12, 511 P.3d 176, 180–81 (Wyo. 2022). We afford no deference to the prior courts' conclusions of law.  *See Best v. Best*, 2015 WY 133, ¶ 7, 357 P.3d 1149, 1151 (Wyo. 2015); *Mathews v. State*, 2014 WY 54, ¶¶ 1, 12, 322 P.3d 1279, 1281 (Wyo. 2014) (reversing a district court's order affirming the defendant's conviction in circuit court); *see also Bear Cloud v. State*, 2013 WY 18, ¶¶ 13–14, 294 P.3d 36, 40 (Wyo. 2013) (citation omitted).

[¶14]   Mr. Woods contends the officers' warrantless entry into his home to effectuate a warrantless arrest was unlawful because it violated the Fourth Amendment to the United States Constitution and thus all the evidence related to the illegal seizure should have been excluded.[2]  The State asserts Mr. Woods' motion to suppress was not a proper pretrial motion, and even if the motion was proper, there was no suppressible evidence.  Because we conclude the officers were not "engaged in the lawful performance" of their official

---

[2] Mr. Woods also asserts the officers violated his rights under the Wyoming Constitution.  Though Mr. Woods cited Article 1, section 4 in his motion to suppress and on appeal to the district court, he did not adequately develop or argue the state constitutional issue before either court.  *See Sheesley v. State*, 2019 WY 32, ¶¶ 13–16, 437 P.3d 830, 836–38 (Wyo. 2019).  "General citation to the Wyoming Constitution does not suffice to preserve a state constitutional argument for appeal, nor does citation to cases decided under the Wyoming Constitution without argument concerning how they apply to the case under consideration."  *Crebs v. State*, 2020 WY 136, ¶ 13 n.4, 474 P.3d 1136, 1142 n.4 (Wyo. 2020) (citation omitted).  Accordingly, we confine our analysis to the Fourth Amendment.  *See id.*

3

duties when they entered the home without a warrant—an element necessary to convict under Wyo. Stat. Ann. § 6-5-204(a)—we do not need to address the other issues raised by the parties in their briefing.

[¶15]  In evaluating whether the officers' conduct comported with Mr. Woods' Fourth Amendment rights, we begin with the language of the Fourth Amendment itself, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. The United States Supreme Court has stated "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585–86, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (citation omitted). It "draw[s] a firm line at the entrance to the house." *Lange v. California*, 141 S. Ct. 2011, 2018, 210 L. Ed. 2d 486 (2021) (quoting *Payton*, 445 U.S. at 590); *see also Kyllo v. United States*, 533 U.S. 27, 37, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001) ("[A]ny physical invasion of the structure of the home, 'by even a fraction of an inch,' was too much . . . and there is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but the nonintimate rug on the vestibule floor." (citing *Silverman v. United States*, 365 U.S. 505, 512, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961)). The Fourth Amendment therefore generally requires officers to obtain a warrant before entering a home without permission. *Lange*, 141 S. Ct. at 2017 (citation omitted).

[¶16]  This Court has also acknowledged "the important role of the Fourth Amendment in relation to the home." *Hawken*, ¶ 15, 511 P.3d at 181; *Fuller*, ¶ 9, 481 P.3d at 1133. We have stated "a bright line has been drawn at the threshold of a person's dwelling which cannot be crossed to effectuate the warrantless arrest of a suspect absent consent or exigent circumstances." *Mickelson II*, 906 P.2d at 1023 (citing *Payton*, 445 U.S. at 589–90); *see also Hawken*, ¶ 15, 511 P.3d at 181–82 ("Entry into a home, no matter how limited, constitutes a search.") (citation omitted). Thus, "[w]arrantless searches and seizures are per se unreasonable unless they are justified by probable cause and established exceptions." *Hawken*, ¶ 16, 511 P.3d at 182 (quoting *Fuller*, ¶ 9, 481 P.3d at 1134). The State bears the burden to prove an exception to the warrant requirement for entering a home applies. *E.g.*, *Fenton v. State*, 2007 WY 51, ¶ 2, 154 P.3d 974, 975 (Wyo. 2007) (quoting *Pena v. State*, 2004 WY 115, ¶ 29, 98 P.3d 857, 870 (Wyo. 2004)); *see also Fuller*, ¶ 10, 481 P.3d at 1133.

[¶17]  Officer Warren and the other officers entered Mr. Woods' home without any type of warrant to effectuate a warrantless arrest because they had probable cause to believe Mr. Woods committed a misdemeanor crime. As such, their entry into Mr. Woods' home is per se unreasonable unless the State proves an exception to the warrant requirement for entering a home applies. *Hawken*, ¶ 16, 511 P.3d at 182 (quoting *Fuller*, ¶ 9, 481 P.3d at 1134). Exceptions include either consent or exigent circumstances such as rendering emergency assistance to a home's occupant, preventing harm to the police or to other persons, preventing the imminent destruction of evidence, engaging in "hot pursuit" of a

4

fleeing suspect, among others. *Fuller*, ¶ 10, 481 P.3d at 1134 (citations omitted); *Hawken*, ¶ 16, 511 P.3d at 182 (citations omitted); *Vassar v. State*, 2004 WY 125, ¶ 13, 99 P.3d 987, 993 (Wyo. 2004) (citation omitted); *Mickelson II*, 906 P.2d at 1023 (quoting *Payton*, 445 U.S. at 589–90).

[¶18] Mr. Woods throughout the encounter made it clear to the officers he would not step outside his home or consent to their entry. *Kentucky v. King*, 563 U.S. 452, 470, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011) ("[E]ven if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time."). Further, Officer Warren acknowledged during the suppression hearing and at trial he believed, at the time of Mr. Woods' arrest, that Mr. Woods did not possess any weapons, did not pose an immediate threat to Ms. Jackson, did not possess any evidence that could be destroyed, and no extenuating circumstances necessitated the arrest at that time. *Lange*, 141 S. Ct. at 2022 (stating when no exigency is presented "officers must respect the sanctity of the home—which means that they must get a warrant").

[¶19] In its briefing to this Court the State appeared to concede that no exigent circumstances or other exceptions to the warrant requirement justified the officers' warrantless entry into Mr. Woods' home. At oral argument, however, the State asserted that the hot pursuit exception to the warrant requirement applied, citing to *United States v. Santana*, 427 U.S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976). Because the circuit and district courts each relied on *Santana* to conclude Mr. Woods' arrest was reasonable under the Fourth Amendment, we will address the State's argument.

[¶20] In *Santana*, officers developed probable cause to arrest Ms. Santana for distribution of heroin and, without a warrant, proceeded to her house. *Id.* at 40–41. When they arrived, Ms. Santana was standing in the threshold of the front door, with the door open, holding a brown paper bag. *Id.* at 40. As the officers approached shouting "police" and displaying identification, Ms. Santana retreated into the house. *Id.* The officers pursued and arrested her inside. *Id.* The United States Supreme Court upheld the officers' arrest because Ms. Santana had no reasonable expectation of privacy while standing in the open doorway of her house, exposing herself "to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* at 42 (citation omitted). The Court thus determined Ms. Santana was in a "public place" when the officers arrived and initiated the arrest. *Id.* It then held the warrantless entry of Ms. Santana's house was justified under the "hot pursuit" exception to the warrant requirement because "there was . . . a realistic expectation that any delay would result in destruction of evidence." *Id.* at 43 (citation omitted).

[¶21] The U.S. Supreme Court's reasoning in *Santana* simply does not apply here. Mr. Woods did not surrender his reasonable expectation of privacy when his wife answered a knock on the closed door of their home. *See Santana*, 427 U.S. at 42; *see also Florida v.*

5

*Jardines*, 569 U.S. 1, 6–7, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) (discussing the privacy expectations associated with the home and the area surrounding it). Further, during the entire encounter, Mr. Woods stood behind his wife inside the home. As such, Mr. Woods was not in a "public place" when the officers initiated the arrest. *See Morse v. Cloutier*, 869 F.3d 16, 27 (1st Cir. 2017) (holding Mr. Morse was not in a public place when officers "summoned him to his door" and "he remained behind [the] locked door"); *United States v. Allen*, 813 F.3d 76, 82 (2d Cir. 2016); *see also Jardines*, 569 U.S. at 7. The officers' entry into Mr. Woods' home without a warrant also was not justified given the absence of any exigent circumstances, such as the need to prevent the imminent destruction of evidence or to prevent a suspect's escape. *Lange*, 141 S. Ct. at 2017–18; *Fuller*, ¶ 10, 481 P.3d at 1134; *Allen*, 813 F.3d at 82 (concluding "that where law enforcement officers have summoned a suspect to the door of his home, and he remains inside the home's confines, they may not effect a warrantless 'across the threshold' arrest in the absence of exigent circumstances").

[¶22] Mr. Woods draws a close analogy between our decisions in *Mickelson I* and *Mickelson II* and the circumstances of his arrest. *Mickelson I*, 886 P.2d 247; *Mickelson II*, 906 P.2d 1020. In *Mickelson I*, an officer observed two men playing pool inside a bar at 2:37 a.m. when the bar had been required to vacate customers by 2:30 a.m. *Mickelson I*, 886 P.2d at 248. After further observation, the officer approached the locked bar joined by two other officers. *Id.* The officers asked Mr. Mickelson through a window to unlock the door. *Id.* He initially refused but decided to let one officer enter the bar. *Id.* However, all three officers subsequently entered the bar without a warrant and arrested Mr. Mickelson. *Id.* at 249. He was later convicted of misdemeanor interference with a peace officer. *Id.* On appeal to this Court, the State asserted the officers' warrantless entry into the bar was justified under Wyo. Stat. Ann. § 12-2-304(c), which allows an officer to enter a liquor establishment after business hours when the officer has "reasonable grounds" to believe a violation of the liquor laws has occurred at that establishment. *Mickelson I*, 886 P.2d at 249. This Court held the officers did not have the lawful authority under the statute to demand entry into the bar and thus Mr. Mickelson's actions "did not result in an interference with the performance of the officer's official duties." *Id.* at 251. We reversed his conviction. *Id.*

[¶23] In *Mickelson II*, this Court granted rehearing and reaffirmed its original judgment. *Mickelson II*, 906 P.2d at 1021. Rather than readdressing Wyo. Stat. Ann. § 12-2-304(c), we acknowledged officers are authorized under Wyo. Stat. Ann. § 7-2-102(b) to make warrantless arrests under certain conditions when they have probable cause.[3] However,

---

[3] Wyo. Stat. Ann. § 7-2-102(b) provides:

> (b) A peace officer may arrest a person without a warrant when:
>     (i) Any criminal offense is being committed in the officer's presence by the person to be arrested;

such arrests in previous cases involved only arrests in a public place, not a home or private business. *Id.* at 1024 (citations omitted). "When the threshold of a home or private place of business intervenes, probable cause is insufficient to warrant entry absent the presence of exigent circumstances or the audience of a neutral and detached magistrate." *Id.* The officers had entered the bar without a warrant or exigent circumstances to effectuate Mr. Mickelson's arrest, and thus did not lawfully enter the bar. *Id.* at 1023. As a result, we upheld our reversal of Mr. Mickelson's conviction reasoning the legality of his arrest is "elemental" to the alleged crime of interference with a peace officer because such interference "is not a crime unless the officer is 'engaged in the lawful performance of his official duties.'" *Id.* at 1023 (quoting Wyo. Stat. § 6-5-204(a) and (b)). We agree with Mr. Woods that the same reasoning applies here.

[¶24] Because the officers' warrantless entry into Mr. Woods' home is per se unreasonable and was not shown by the State to be justified under any of the exceptions to the warrant requirement, we must conclude the officers' warrantless entry into Mr. Woods' home to effectuate a warrantless arrest violated the Fourth Amendment. *Mickelson II*, 906 P.2d at 1023 (citing *Payton*, 445 U.S. at 589–90); *Allen*, 813 F.3d at 88–89. As such, the officers were not engaged in the lawful performance of their duties in effectuating Mr. Woods' arrest, and Mr. Woods did not commit a crime when he resisted being handcuffed and forced out of his home. An "essential element of the crime" was missing. *Mickelson I*, 886 P.2d at 251; *Mickelson II*, 906 P.2d at 1023. Therefore, Mr. Woods' conviction for misdemeanor interference with a peace officer cannot stand. *See Mickelson I*, 886 P.2d at 251; *Mickelson II*, 906 P.2d at 1023.

[¶25] Reversed.

---

(ii) The officer has probable cause to believe that a felony has been committed and that the person to be arrested has committed it; or
(iii) The officer has probable cause to believe that a misdemeanor has been committed, that the person to be arrested has committed it and that the person, unless immediately arrested:
    (A) Will not be apprehended;
    (B) May cause injury to himself or others or damage to property; or
    (C) May destroy or conceal evidence of the commission of the misdemeanor.